938 P.2d 1134

Mitchell Paul BILKE; Charles Roberts; Kenneth Ashelman; Felton Hale; Richard S. Berry; Mervin L. Davis; and Damon D. Fisher, individually and as members of a class, Plaintiffs–Appellants,

v.

STATE of Arizona; ARCOR Enterprises, a subdivision of the state; Arizona Correctional Industries, a subdivision of the state; James Ricketts, former director of the Arizona Department of Corrections (DOC); Samuel Lewis, director of the DOC; Marilyn Wilkins, director of the Arizona Correctional Industries; Thomas Lescault, director of ARCOR; Tony West, David Tierney, Earl Cobb, Thomas Donnelly, Henry Evans, Marcus Englemen, Delbert Householder, and Ray Shaffer, members of the board of directors, ARCOR Enterprises, Defendants–Appellees.

Larry Lynn HAMON, a single man, Plaintiff–Appellant,

v.

STATE of Arizona; Arizona Department of Corrections, a department of the State of Arizona; Samuel Lewis and Jane Doe Lewis, his wife; Marilyn Wilkens and John Doe Wilkens, her husband; Daniel Wilkins and Jane Doe Wilkins, his wife; ARCOR Enterprises, a division of the State of Arizona; Arizona Correctional Industries, a division of the State of Arizona, Defendants–Appellees.

John COYLE; Jeffrey L. Wadsworth; and Saul Gonzales, Plaintiffs–Appellants,

v.

STATE of Arizona, Defendant–Appellee.

No. 1 CA–CV 96–0326.

Court of Appeals of Arizona, Division 1, Department E.

May 29, 1997.

Michael E. St. George, Tempe, for Plaintiffs–Appellants.

Grant Woods, Attorney General by Gordon S. Bueler and Sonia D. Overholser, Assistant Attorneys General, Phoenix, for Defendants–Appellees.

## OPINION

KLEINSCHMIDT, Judge.

This case originates in a suit filed by current and former inmates against the State of Arizona, the Department of Corrections, AR-COR Enterprises, Arizona Correctional Industries, and various individuals named in their official capacities. We will refer to the defendants collectively as "the Department." The inmates claim that they should have been paid the minimum wage for work they did as part of the Department's industries program. We disagree, and we affirm the summary judgment entered against the inmates.

## FACTS AND PROCEDURAL HISTORY

In 1969, the legislature created "ARCOR," Arizona Correctional Enterprises, and the correctional industries program. 1969 Ariz. Sess. Laws Ch. 81, § 12, codified at Ariz.Rev. Stat. Ann. ("A.R.S.") §§ 41–1621 to 41–1630. The program was designed to provide opportunities to use prisoners' labor in the production of products to be used by the state or to be sold to the public. *See* A.R.S. § 41–1622.

ARCOR later became "ACI," Arizona Correctional Industries. 1987 Ariz. Sess. Laws Ch. 358, § 2.

A number of inmate plaintiffs brought this suit. Summary judgment was entered using representative facts pertaining to three of them. Larry Lynn Hamon was employed in the correctional industries program from August 1985 to December 1986 as a skilled sheet metal worker. His job included supervising inmate employees assigned to the sheet metal shop, organizing and assigning work orders to inmate employees, setting up and adjusting product lines, designing product patterns and layouts, and the fabrication of these products. His initial pay was forty cents an hour, and over time he was given raises to eighty-five or ninety cents an hour. Many of the products Hamon produced were fabricated for private contractors, and went to companies in Tucson, the State of Washington, and New York. Some went to governments of other states and to county governments in California. Raw materials used to produce the products in the sheet metal shop were regularly purchased from out-of-state suppliers.

Richard S. Berry worked for a company called C/A Buckles. C/A Buckles was an IOBE—"Inmate Operated Business Enterprise"—established under ARCOR. IOBE has been described thus:

> As the name suggests, selected inmates in the IOBE program organize and operate their own businesses under ARCOR's supervision. Workers are selected by the inmate-owner and then apply to the Department of Corrections ("DOC") for the right to work. The profits from the businesses belong to the inmate owners, and the businesses can be sold. The businesses market their goods to the private sector. The DOC monitors the businesses and exacts a portion of the profits along with a monthly rent. Inmate wages are paid to the DOC, which in turn pays the inmates by depositing the funds into their commissary accounts. Inmates are paid 50 cents an hour for their work.

*Hale v. Arizona,* 967 F.2d 1356, 1360 (9th Cir.1992), *vacated,* 993 F.2d 1387 (9th Cir.)

(en banc), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993).

C/A Buckles manufactured and sold custom belt buckles. While Berry worked for C/A Buckles, it had three telephone lines to the outside world. Berry worked principally in retailing and office administration. He took customer orders and shipped products, received supplies and managed the office. He was paid fifty dollars per month, working approximately forty hours a week. The business regularly purchased tools, office and production supplies from gem companies, handicraft manufacturers, metal plants and other suppliers, in and out of state. C/A Buckles had customers in Arizona, California, Kansas, Nevada, and England. It also sold buckles to other retailers, both within and without the state. All goods and supplies C/A Buckles sold and bought were shipped via U.S. Mail or United Parcel Service. Berry's job regularly entailed handling these shipments.

Kenneth Ashelman worked for a private business, Cutter Biological, a division of Script Miles Laboratories. Cutter operated a blood plasma center on prison grounds. Ashelman initially performed menial tasks for twelve dollars per week. He was eventually promoted to centrifuge operator, and was paid twenty dollars per week for forty hours of work.

In 1985, the inmates sued the state and various correctional industries officials in federal court, seeking the federal minimum wage for work they performed, based on federal and state law. The federal court ruled against them on their claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219. *See Hale v. Arizona,* 993 F.2d 1387 (9th Cir.) (en banc), *cert. denied,* 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993); *Gilbreath v. Cutter Biological, Inc.,* 931 F.2d 1320 (9th Cir.1991).

The inmates also filed these actions in state court seeking redress under state law. The parties filed cross-motions for summary judgment. The trial court ruled that Ashelman was entitled to the minimum wage, but declined to award him treble damages. It ruled against all claims represented by Berry and Hamon. The inmates appealed, and the

state cross-appealed the court's ruling as to Ashelman. The state subsequently dismissed its cross-appeal so we need not discuss further the issue raised by the facts of his employment.

## BERRY AND HAMON WERE NOT ENTITLED TO THE MINIMUM WAGE BECAUSE THEY WERE NOT WORKING UNDER A CONTRACT BETWEEN THE DIRECTOR OF THE DEPARTMENT OF CORRECTIONS AND A PRIVATE PERSON OR ENTITY

The Plaintiffs base their claims on A.R.S. sections 31–254 and 41–1623(E) (now repealed). We address them in order. At the time the complaint was filed, A.R.S. section 31–254 provided:

A. Each prisoner who is engaged in productive work in any state prison or institution under the jurisdiction of the department of corrections as a part of the prison industries program shall receive for his work such compensation as the director of the department of corrections shall determine. Such compensation shall be in accordance with a graduated schedule based on quantity and quality of work performed and skill required for its performance, but in no event shall such compensation exceed fifty cents per hour unless the prisoner is employed in an ARCOR enterprise pursuant to title 41, chapter 11, article 3. If the director enters into *a contract pursuant to § 41–1624.01 with a private person, firm, corporation or association* the compensation shall be as prescribed by the person, firm, corporation or association but shall not be below the minimum wage. Compensation shall not be paid to prisoners for attendance at educational training or treatment programs, but compensation may be paid for work training programs.

A.R.S. § 31–254, *amended by* 1985 Ariz. Sess. Laws Ch. 265, § 1 (footnote omitted) (emphasis added).

■ Berry and Hamon argue that they worked for ARCOR pursuant to private con-

tracts and are therefore covered by this section. Their theory is that the prison sheet-metal program and C/A Buckles both sold some of their products to, and purchased supplies from, private entities. They reason that without the customer contracting and paying for the product, they would have had no jobs.

Under the clear language of A.R.S. section 31–254(A), the minimum wage requirement applies only when there is a contract between the director of the Department "pursuant to § 41–1624.01 with a private person, firm, corporation or association." Section 41–1624.01(B) allows the director to contract with "any private person, firm, corporation or association to provide services or labor rendered by prisoners." The minimum wage requirement of section 31–254(A) is clearly tied to that limited situation. It does not provide for the minimum wage just because a prisoner's work is a component of a product that is sold to a private person or entity.

Hamon worked for the Department, not for a private business. Berry worked for a fellow prisoner; the DOC did not provide his labor to a private person. The inmates are simply wrong in asserting that they are entitled to the minimum wage merely because the entities they worked for had contracts with private parties.

Berry makes another somewhat confusing argument in which he alludes to, without actually invoking, the Ashurst–Sumners Act, 18 U.S.C. § 1761(a). This federal statute generally prohibits placing products made by prisoners into interstate commerce. There is an exception for products made in pilot projects under the aegis of the Law Enforcement Assistance Administration ("LEAA"). 18 U.S.C. § 1761(c).[1] The statute requires that the prisoners in such a project "receive[ ] wages at a rate which is not less than that paid for work of a similar nature in the locality in which the work was performed...." 18 U.S.C. § 1761(c)(2) (Supp. 1997).

The IOBE program was approved in 1982. Berry claims that in its application for LEAA approval, the Department represented that it

---

1. The statute has been amended and the program is now administered by the Bureau of Justice

Assistance. 18 U.S.C. § 1761(c), *amended by* Pub.L. No. 98–473, § 609K(2).

would pay the minimum wage to prisoners in the program. There are problems with this argument, not the least of which is that nowhere in the application does the Department promise that IOBE prisoner-workers would be paid the minimum wage. The application states that non-owners "will be employed as an independent subcontractor to the proprietor and shall be paid as such." It then addresses pay for inmate workers and provides that under certain circumstances inmates will be paid the "prevailing wage," saying nothing about the "minimum wage."

Berry acknowledges that there is no private cause of action under the Ashurst–Sumners Act. *See Wentworth v. Solem*, 548 F.2d 773, 775 (8th Cir.1977) (no private cause of action for minimum wages under 18 U.S.C. § 1761); *Hale*, 993 F.2d at 1397 n. 16 (citing *Wentworth*). He claims not to be suing under the act, and disclaims any rights as a third-party beneficiary to the relationship between the Department and LEAA. He appears to rely on A.R.S. section 31–254:

> [P]laintiffs here do not sue under that [Ashurst–Sumners] Act. They sue under a state law independently creating the right to a wage, one that says when a contract exists, in this case, the certification grant, the wage is due. More-over [sic], as has been noted, the certification contains the state's express promise that it will pay the minimum wage. Third party beneficiary theory has nothing to do with it. The state flatly violated federal law with not paying the wage....

We have already held that section 31–254 does not provide the plaintiffs the relief they seek and if we are correct, that is the end of Berry's claim.

## ARIZONA REVISED STATUTES SECTION 41–1623 REQUIRES PAYMENT OF THE MINIMUM WAGE ONLY WHEN THE DEPARTMENT LEASES PROPERTY TO A PRIVATE CORPORATION FOR A COMMERCIAL ENTERPRISE THAT USES INMATE LABOR

The plaintiffs base their next argument on former A.R.S. section 41–1623(E):

> Except as prohibited by applicable provisions of the United States Code, inmates of correctional institutions of this state may be employed in the manufacture and processing of products for introduction into interstate commerce, so long as they are paid no less than the prevailing minimum wage.

*Added by* 1978 Ariz. Sess. Laws Ch. 164, § 20 (as subsection (D)); *repealed by* 1989 Ariz. Sess. Laws Ch. 65, § 1. The inmates argue that Hamon produced, and Berry processed, products that were introduced into interstate commerce and therefore the Department had to pay them the federal minimum wage. The Department argues that subsection E should be interpreted as a restriction on subsection D, which permits the Department to allow private businesses to lease prison property and use prisoner labor. Subsection D provides:

> The director or his designee, consistent with sound business judgment, may construct, reconstruct or lease one or more buildings or portions of buildings on the grounds of any state correctional institution or location under department control, together with the real estate needed for reasonable access to such buildings, any lease to have a term of not to exceed twenty years, to a private corporation for the purpose of establishing and operating a factory for the manufacture and processing of products or any other commercial enterprise deemed by the director to provide employment opportunities for inmates in meaningful jobs for wages. Each lease negotiated and concluded pursuant to this section shall include and shall be valid only as long as the lessee adheres to the following provisions:
>
> 1. All persons employed in the factory or other commercial enterprise operated in or on the leased property, except the lessee's supervisory employees and necessary training personnel, shall be inmates of the institution where the leased property is located who are approved for such employment by the director or his designee.
>
> 2. The factory or other commercial enterprise operated in or on the leased property shall observe at all times such prac-

tices and procedures regarding security as the lease may specify or as the director may temporarily stipulate during periods of emergency.

3. The factory or other commercial enterprise operated on the leased property shall be deemed a private enterprise and subject to all the laws and lawfully adopted rules of this state governing the operation of similar business enterprises elsewhere.

A.R.S. § 41–1623(D) (1992). The inmates respond that there is nothing to indicate that subsection E was intended only as a limit on subsection D. We disagree.

Section 41–1623 was added in 1969 and comprised of only subsections A and B.1969 Ariz. Sess. Laws Ch. 81, § 12. Subsections C and D were added by amendment in 1978. 1978 Ariz. Sess. Laws Ch. 164, § 20. The language that was to become subsection E was the last paragraph of subsection D. *Id.* In other words, the requirement for paying the prevailing minimum wage was indeed a part of subsection D, as it was originally added. It was not until a 1984 amendment that the language was moved to a separate subsection E.1984 Ariz. Sess. Laws Ch. 251, § 34. As mentioned, former subsection E was repealed in 1989, and a new and different provision became subsection E. 1989 Ariz. Sess. Laws Ch. 65, § 1.

In the same piece of legislation that added subsection D (including the language of former subsection E), the legislature also amended A.R.S. section 31–254(A). The change added the language providing for paying the minimum wage for prisoners when the director entered into a contract for prisoner labor pursuant to section 41–1624.01. 1978 Ariz. Sess. Laws Ch. 164, § 11.

Thus, former subsection E arose as part of subsection D, which came into being with the provision for paying the minimum wage when the prisoner worked under a contract by which the Department provided inmate labor to a private business. This history is a strong indication of the intent of the legislature: former subsection E applied only when the Department leased out space and prisoners' labor to private businesses. Neither Berry nor Hamon was employed in such an enterprise. The trial court's ruling was correct.

As noted above, the plaintiffs' § 1983 claim depends on their statutory claims, which we have rejected. They also rely on *Piatt v. MacDougall,* 773 F.2d 1032 (9th Cir.1985), in which the Ninth Circuit held that if the director of the Department deliberately and as a matter of policy denied prisoners wages that were due them under state statutes, then they were entitled to relief. Because the plaintiffs have not proven themselves entitled to relief under the statutes on which they rely, *Piatt* does not apply.

## ASHELMAN IS NOT ENTITLED TO TREBLE DAMAGES

■ Finally, Ashelman claims that the trial court erred when it did not treble the amount it awarded him for his work for Cutter Biological. He relies on A.R.S. section 23–355 (1995):

If an employer, in violation of the provisions of this chapter, shall fail to pay wages due any employee, such employee may recover in a civil action against an employer or former employer an amount which is treble the amount of the unpaid wages.

An "employee" is "any person who performs services for an employer under a contract of employment. . . ." A.R.S. § 23–350(2) (1995). We find no error.

By statute, the inmates here cannot claim employee status nor an employer/employee relationship with the Department:

No prisoner compensated under this section shall be considered as an employee or to be employed by the state or the department, nor shall any such prisoner come within any of the provisions of the workers' compensation provided in title 23, chapter 6 or be entitled to any benefits thereunder whether on behalf of the prisoner or of any other person.

A.R.S. § 31–254(J) (Supp.1996) (footnote omitted). The inmate argues that this statute only means that the prisoner cannot claim workers' compensation. Such a limited interpretation would render the first clause

of the second sentence superfluous, and we therefore reject it. *See Patterson v. Maricopa County Sheriff's Office,* 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993). The legislature has made it quite clear that prisoners as laborers are not to be considered employees of the Department. *See also* A.R.S. § 31–251(E) (1996):

> Notwithstanding any other law, no prisoner given a work assignment or required to perform any labor by the state department of corrections shall be considered an employee or to be employed by the state or the state department of corrections, regardless of whether the prisoner is compensated or not, nor shall an employee-employer relationship exist between the prisoner and the state department of corrections or the state for any purpose and none of the rights or privileges otherwise accorded to employees by law shall accrue to such prisoners.

Ashelman was not entitled to relief under A.R.S. section 23–355.

■ If that were not enough, treble damages are not awardable where the failure to pay wages arises out of a good faith dispute. *See* A.R.S. § 23–352 (1995) and *Schade v. Diethrich,* 158 Ariz. 1, 12, 760 P.2d 1050, 1062 (1988).

The judgment of the trial court is affirmed.

WEISBERG, P.J., and VOSS, J., concur.