979 P.2d 10

**Richard M. FORD, Intervenor–Appellant,**

**v.**

**STATE of Arizona; Arcor Enterprises, a subdivision of the State; Arizona Correctional Industries, a subdivision of the State; James Ricketts, former Director of the Arizona Department of Corrections; Samuel Lewis, Director of the Arizona Department of Corrections; Marilyn Wilkens, Director of Arizona Correctional Industries; Thomas Lescault, Director of Arcor; Tony West, David Tierney, Earl Cobb, Thomas Donnelly, Henry Evans, Marcus Englemen, Delbert Householder and Ray shaffer, members of the board of directors, Arcor Enterprises, Defendants–Appellees.**

No. 1 CA–CV 98–0279.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 25, 1999.

Janet A. Napolitano, Attorney General by Gordon S. Bueler and Thomas J. Dennis, Assistant Attorneys General, Phoenix, Attorneys for Defendants–Appellees.

Richard M. Ford, Tucson, In Propria Persona.

## OPINION

NOYES, Judge

¶ 1  More than a decade ago, Richard M. Ford ("Appellant") worked for wages while serving the prison sentence he still serves. The State was supposed to pay minimum wage for this work, but it paid Appellant only $.30 an hour.  After Appellant sued and received a judgment against the State for back wages, the State was allowed to deduct thirty percent of the judgment as a contribution toward Appellant's "room and board."  This deduction is authorized by Arizona Revised Statutes Annotated ("A.R.S.") section 31–254(E)(4) (1996) (current version at A.R.S. § 31–254(E)(4) (Supp.1998)) and is not an issue in this appeal.

¶ 2  This appeal challenges an additional eighty percent deduction the State took pursuant to A.R.S. section 31–238(D) (1996) "to set off the cost of incarceration."  We hold that the more specific statute is the only one that applies here.  The State cannot take both a "cost of incarceration" deduction and a

"room and board" deduction from an inmate's back wage claim.

## I.

¶3 In 1995, Appellant intervened in a lawsuit filed by other inmates against the State, Arcor Enterprises, Arizona Correctional Industries, and various individuals (collectively, "the State"). The complaint alleged that, in 1983 and 1984, while a State prisoner, Appellant worked for Cutter Industries, a private business that operated a blood plasma center on prison grounds using prison labor under a contract with the Arizona Department of Corrections ("ADOC"). Appellant alleged that he was paid $.30 per hour and that the State was required to pay minimum wage by the former A.R.S. sections 31–254(A) (1996)[1] and 41–1624.01(B) (1996).

¶4 The trial court agreed with Appellant and awarded him $11,678.98 in back pay, arrived at by the following calculation:

| | |
|---|---|
| Minimum wage for 2,248 hours: | $ 7,530.80 |
| Actual wage at $.30 per hour: | − $ 674.40 |
| Total back wages: | $ 6,856.40 |
| Room and Board deduction of 30%: | − $ 1,547.74 |
| Total back wages owed: | $ 5,308.66 |
| Interest (12 years at 10% per year): | + $ 6,370.32 |
| Total Judgment: | $11,678.98 |

¶5 The State paid twenty percent of the total judgment and withheld eighty percent pursuant to A.R.S. section 31–238(D) to "set off the cost of incarceration." Appellant challenged this withholding, and the trial court agreed with the State. Appellant timely appealed.[2] We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## II.

¶6 The case involves statutory interpretation, and our review is *de novo*. *See R.E. Monks Constr. Co. v. Aetna Cas. & Sur. Co.*, 189 Ariz. 575, 576, 944 P.2d 517, 518 (App.1997). We do not need to decide the constitutionality of any statute here, because the case can be resolved on other grounds. *See Aitken v. Industrial Comm'n*, 183 Ariz. 387, 389, 904 P.2d 456, 458 (1995).

¶7 The general rule is that a statute should be interpreted in such a way as to give it a fair and sensible meaning. *See Robinson v. Lintz*, 101 Ariz. 448, 452, 420 P.2d 923, 927 (1966). When a general statute collides with a specific statute, the specific one controls. *See City of Phoenix v. Superior Ct.*, 139 Ariz. 175, 178, 677 P.2d 1283, 1286 (1984) (holding that statute allowing county to recover costs from city for hospitalizing city inmate controlled over general statute providing that county was to bear such costs).

¶8 The State's right to an eighty percent deduction from an inmate's claim is based on A.R.S. section 31–238, which provides:

D. The state shall have the right to set off the cost of incarceration calculated under subsection A at any time and without prior notice against any claim made by or monetary obligation owed to a person for whom a cost of incarceration can be calculated, except that twenty percent of any claim or monetary obligation shall be exempt from the provisions of this section.

The State's right to deduct thirty percent from an inmate's wages is based on former section 31–254, which provides:

E. If the compensation due a prisoner equals or exceeds the minimum wage, the director shall credit to the prisoner's spendable account established pursuant to § 31–230 an amount equaling fifty cents per hour for each hour compensation is due plus ten per cent of the compensation due a prisoner which exceeds the fifty cents per hour base. The remaining monies shall be credited to the prisoner's trust fund or escrow fund account established by the director pursuant to § 31–261, subsection B.... [M]onies in such accounts shall be expended monthly by the prisoner for the following purposes in the order specified:

1. Not less than thirty nor more than sixty per cent for the room and board costs

---

1. This statute has since been amended to provide a wage of "at least two dollars an hour" rather than the minimum wage. *See* 1998 Ariz. Sess. Laws 232, § 6.

2. The State suggests that the appeal might be untimely, but it is not. The trial court did not issue a signed order on the section 31–238(D) issue until March 5, 1998. Appellant filed his appeal on April 3, 1998.

of maintaining the prisoner at the facility in an amount to be determined by the director according to department rule.

¶ 9    Section 31–238 is more general than section 31–254 because "claim made" and "monetary obligation" include more than "compensation due" and because "costs of incarceration" include more than "room and board." One statute applies to any claim by a prisoner; the other applies only to compensation due a prisoner. We therefore hold that, when back wages are the issue, section 31–254 controls and section 31–238 does not apply.

¶ 10    The State argues that the double deduction is warranted because (1) it reimburses the State for a "very small part of its expenses"; (2) it "not only helps reimburse the State for its expenses, but also teaches the inmate responsibility"; and (3) "the Legislature has a legitimate interest in curbing prisoner lawsuits by making prisoners think twice before suing the State."

¶ 11    The State's argument that taking thirty percent and then eighty percent of the judgment will "curb prisoner lawsuits" is a remarkable one in a case where the State has lost the lawsuit. We see more reason to encourage the State to comply with the law than to discourage prisoners from filing meritorious back-wage claims. We agree that frivolous litigation by anyone is to be discouraged, and we note that numerous statutes exist to discourage prisoners from such litigation. See, e.g., A.R.S. § 41–1604.07(H) (Supp.1998) (providing for the forfeiture of five days of earned release credits if a prisoner files a claim without substantial justification or solely for harassment). We also note that Arizona inmates are now responsible for court fees and costs in a case such as this. See A.R.S. § 12–302(E) (Supp.1998). Appellant was ordered to pay a filing fee of $97.25 in this case, paid through the State's withholding of twenty percent of every deposit to Appellant's spendable account. At the wage the State had been paying Appellant (seventy percent of $.30 an hour), that filing fee cost this prisoner the equivalent of about 463 hours of labor.

¶ 12    We agree with the State that whatever Appellant has to pay from his wages will not fully compensate the State for the costs of his incarceration. But that is beside the point here. We also note that the legislature has enacted many laws to make inmates pay for services they receive in the prison, in addition to "room and board." See, e.g., A.R.S. § 31–201.01(G) (1996) (medical and health care services); A.R.S. § 31–201.01(H) (prescriptions, medication, prosthetic devices); A.R.S. § 31–221(G) (1996) (copies of personal records); A.R.S. § 31–239 (1996) (utilities); A.R.S. § 31–255 (Supp. 1998) (alcohol abuse programs).

¶ 13    To allow the State to apply both the wage deduction of section 31–254 and the claim offset of section 31–238 allows the State to profit from its wrongful failure to pay wages. If the State paid prisoner wages when they were due, it could not take both the thirty and the eighty percent deduction, for the prisoner would have no "claim" against the State for back wages. If the State cannot take a double deduction when it is complying with the wage law, it certainly cannot do it after the prisoner proves in court that the State was violating the law.

¶ 14    We agree with the State that Appellant is not covered by A.R.S. section 23–355 (1995), which provides for treble damages when an employer wrongfully fails to pay wages due an employee. This issue was settled in *Bilke v. State*, 189 Ariz. 133, 938 P.2d 1134 (App.1997), an opinion that arose from this very lawsuit. The *Bilke* court noted that A.R.S. section 31–254(J) (Supp.1998) provides that an inmate is not an "employee" and the State is not an "employer" when prison employment is at issue, and thus the State cannot be liable for treble damages in this case. 189 Ariz. at 138–39, 938 P.2d at 1139–40.

### III.

¶ 15    The judgment is vacated and the matter is remanded for recomputation in accordance with this opinion.

FIDEL, Presiding Judge, and WEISBERG, Judge, concur.