SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| MITCHELL PAUL BILKE; CHARLES ROBERT; KENNETH ASHELMAN; FELTON HALE; RICHARD S. BERRY; MERVIN L. DAVIS and DAMON D. FISHER, individually and as members of a class, | ) ) ) ) ) ) ) |

Arizona Supreme Court
No. CV-03-0034-PR

Court of Appeals
Division One
No. 1 CA-CV 01-0601

Plaintiffs-Appellees,

Maricopa County Superior
Court
No. CV 88-026272

v.

STATE OF ARIZONA; ARCOR ENTERPRISES, a subdivision of the State; ARIZONA CORRECTIONAL INDUSTRIES, a subdivision of the State,

**O P I N I O N**

Defendants-Appellants.

Appeal from the Superior Court in Maricopa County
No. CV 88-026272
The Honorable Edward O. Burke, Judge

**REVERSED**

Court of Appeals, Division 1
No. 1 CA-CV 01-0601 (Oct. 15, 2002) (mem. decision)

**APPROVED IN PART**

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                           Phoenix
     By    Daniel P. Schaack, Assistant Attorney General
Attorneys for Defendants-Appellants

Michael E. St. George
Attorney for Plaintiffs-Appellees                                   Tempe

**R Y A N**, Justice

¶1      In Arizona, "an interlocutory judgment which determines the rights of the parties and directs an accounting or other proceeding to determine the amount of the recovery" may be appealed. Ariz. Rev. Stat. ("A.R.S.") § 12-2101(G) (2003). We granted review to resolve a conflict between two decisions of the court of appeals as to the proper interpretation of the phrase "accounting or other proceeding to determine the amount of the recovery." We hold that interlocutory judgments can be appealed under § 12-2101(G) when the trial judge has signed an order that contains language indicating that the judgment is a final determination of the rights of the parties and the only remaining issue is the amount of recovery. We also hold that appeals under § 12-2101(G) are not limited to cases in which an accounting or similar equitable proceeding has been ordered to determine the amount of recovery. We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution, A.R.S. § 12-120.24 (2003), and Rule 23 of the Arizona Rules of Civil Appellate Procedure.

## I.

¶2      Plaintiffs filed the original complaint in this case in 1988, challenging the wages they were paid while incarcerated. Plaintiffs were employed either by Arizona Correctional Enterprises, Inmate Operated Business Enterprises,

or by privately owned companies. *See Bilke v. State*, 189 Ariz. 133, 134-35, 938 P.2d 1134, 1135-36 (App. 1997). The trial court ruled that any plaintiff who worked for a private company was entitled to receive the minimum wage. *Id*. at 135, 938 P.2d at 1136. The State did not challenge this ruling. *Id*. at 136, 938 P.2d at 1137.

¶3        In 2000, the superior court granted plaintiffs permission to file a second amended complaint to add inmates who worked at a coupon-processing plant in Winslow. The complaint also sought class certification, which the trial court granted.

¶4        Both sides then filed motions for summary judgment. Citing the first trial court's ruling that inmates who worked under a contract with a private entity on prison grounds were entitled to receive the minimum wage, *see id*., plaintiffs sought summary judgment solely on liability. Because the Winslow plant had closed in 1998, the State argued that the one-year statute of limitations had run on the claim. *See* A.R.S. § 12-821 (2003) ("All actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward."). Plaintiffs countered that their claim related back to the filing of the original complaint under Rule 15(c) of the Arizona Rules of Civil Procedure.[1] The trial court agreed

---

[1]    Rule 15(c) provides:    "Whenever the claim or defense asserted in the amended pleading arose out of the conduct,

3

with plaintiffs, finding that the claims related back to the original complaint. The court then granted partial summary judgment on liability.

¶5    The State subsequently requested that the court enter a judgment "with finality language, so that it could immediately appeal." The court granted the request on the condition that the form of judgment contain language stating:

> [T]he judgment resolves the parties' rights as to liability and [] the State is liable for the minimum wage if the Statute of Limitations has not been violated. The only unresolved question is the amount of recovery.

The court eventually signed a judgment that incorporated the above language.

¶6    The State appealed, citing A.R.S. § 12-2101(G) and *Cook v. Cook*, 26 Ariz. App. 163, 547 P.2d 15 (1976), as the basis for jurisdiction. *Cook* held that a summary judgment solely on the issue of liability could be appealed under § 12-2101(G) when the only question remaining was the amount of damages, and the trial court, in the exercise of its discretion, entered an interlocutory judgment with express language determining that an appeal should lie under § 12-2101(G). *Id.* at 168, 547 P.2d at 20.

---

transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Ariz. R. Civ. P. 15(c).

4

**¶7** The court of appeals reversed, holding that under the facts, Rule 15(c) did not permit plaintiffs' second amended complaint to relate back to the original complaint. *Bilke v. State*, 1 CA-CV 01-0601, ¶ 16 (Ariz. App. Oct. 15, 2002) (mem. decision). The court remanded the matter to the trial court with directions for it "to grant the State's motion for summary judgment on the statute of limitations issue." *Id*.

**¶8** Plaintiffs petitioned this court for review. While the petition was pending, another panel of the court of appeals concluded that *Cook* was wrongly decided and that A.R.S. § 12-2101(G) permits interlocutory review only of those rare cases in which the superior court, after determining liability, orders an accounting or similar equitable proceeding, such as "a tracing to enforce a constructive trust." *Mezey v. Fioramonti,* 204 Ariz. 599, 602-04, ¶¶ 4, 7-15, 65 P.3d 980, 983-85 (App. 2003).[2]

**¶9** The State alerted this court and plaintiffs' counsel to the *Mezey* decision. Plaintiffs then filed a supplemental petition for review, urging that the court of appeals decision be vacated because it lacked jurisdiction to hear the appeal. We granted review to resolve the conflict between *Cook* and *Mezey* as to when A.R.S. § 12-2101(G) permits an interlocutory appeal.

---

[2] Neither party in *Mezey* petitioned this court for review.

5

¶10    "[A]bsent a pertinent provision in the Arizona Constitution, the right of appeal exists only by statute." *Musa v. Adrian*, 130 Ariz. 311, 312, 636 P.2d 89, 90 (1981). Although "[p]ublic policy is . . . against piecemeal appeals," *id.*, A.R.S. § 12-2101(G) permits an appeal of an interlocutory judgment when the only issue left to be determined is the amount of recovery, whether through "an accounting or other proceeding." *Cook* did not limit the phrase "other proceeding" to equitable proceedings.  26 Ariz. App. at 167, 547 P.2d at 19. *Mezey*, on the other hand, concluded that the term "other proceeding" must be strictly limited to equitable proceedings because if it were not so limited, the "general rule of finality" would be swallowed and "the routine civil case in which liability alone has been determined" would be immediately appealable.  204 Ariz. at 605, ¶ 20, 65 P.3d at 986.  We review this question of statutory interpretation de novo. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994).

**A.**

¶11    Principles of statutory interpretation guide our analysis.  The court's chief goal in interpreting a statute is "to fulfill the intent of the legislature that wrote it." *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). In

6

determining the legislature's intent, we initially look to the language of the statute itself. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). If the language is clear, the court must "apply it without resorting to other methods of statutory interpretation," *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994), unless application of the plain meaning would lead to impossible or absurd results. *Marquez v. Rapid Harvest Co.*, 89 Ariz. 62, 64, 358 P.2d 168, 170 (1960). The court must give effect to each word of the statute. *Guzman v. Guzman*, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993) ("A statute is to be given such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant."). In giving effect to every word or phrase, the court must assign to the language its "usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990).

## B.

¶12    We conclude that the plain language of A.R.S. § 12-2101(G) does not limit appeals of interlocutory judgments to equitable proceedings. Nothing in § 12-2101(G) indicates that the "other proceeding" must be similar to an accounting or, alternatively, another equitable proceeding. The statute contemplates only that the proceeding that remains determines

7

the amount of recovery. Thus, a plain reading of § 12-2101(G) does not support the conclusion that it includes only equitable proceedings.

**¶13** Moreover, we agree with *Cook's* rejection of the *ejusdem generis* rule, which if applied would limit "the type of proceedings in which appeals [under § 12-2101(G)] should be allowed." 26 Ariz. App. at 167, 547 P.2d at 19. The *ejusdem generis* rule applies "where general words follow the *enumeration* of particular classes of things." Black's Law Dictionary 517 (6th ed. 1990) (emphasis added). Generally, we have applied this rule to aid in interpretation of statutes that include a list or series of specific, but similar, persons or things. *See, e.g., In re Julio L.*, 197 Ariz. 1, 4, ¶ 11, 3 P.3d 383, 386 (2000) (finding that the term "seriously disruptive" should be interpreted in light of the preceding specific categories of "fighting" and "violent" behavior); *Wilderness World, Inc. v. Dep't of Revenue*, 182 Ariz. 196, 198-99, 895 P.2d 108, 110-11 (1995) (finding that guided river trips are not taxable under a general clause in the statute that taxes "any business charging admission fees for exhibition, amusement or instruction" because a river trip is not of the same kind or nature as the activities specifically listed in the statute — "theaters, movies, operas, shows, exhibitions, concerts, carnivals, circuses, amusement parks, menageries, fairs, races, contests, games, pool parlors,

bowling alleys, dances, and boxing and wrestling matches"). The legislature did not create in A.R.S. § 12-2101(G) a list of specific or similar things from which this court can infer an intention to narrow the subsequent general class of "other proceedings." Thus, the *ejusdem generis* rule does not apply.

¶14 In addition, as the *Cook* court indicated, several factors lead to the conclusion that the phrase "other proceeding" is not limited to equitable proceedings. First, like the court of appeals in *Cook*, we are "unable to identify any substantial number of traditionally equitable proceedings for determining recovery apart from an accounting." 26 Ariz. App. at 167, 547 P.2d at 19. Indeed, *Mezey* identified only one proceeding other than an accounting that would qualify as a "proceeding to determine the amount of recovery" under § 12-2101(G) — a tracing to enforce a constructive trust. 204 Ariz. at 604, ¶ 15, 65 P.3d at 985. Second, *Cook* also observed that "A.R.S. § 12-2101 separately provides for interlocutory appeal in other selected types of traditionally equitable remedies." 26 Ariz. App. at 167, 547 P.2d at 19 (citing A.R.S. § 12-2101(F)(2) (injunctions) and § 12-2101(H) (partitions)). Third, because of the vanishing distinctions between law and equity, § 12-2101(G) "should not be construed on the basis of historical considerations which are becoming increasingly outmoded. In Arizona, the movement to abolish artificial distinctions between

9

law and equity has roots which antedate statehood." *Id.* (citing *Rees v. Rhodes*, 3 Ariz. 235, 237, 73 P. 446, 446 (1890)).

**¶15**     Had the legislature intended § 12-2101(G) to preserve the distinction between law and equity, it could have simply added "similar" or "equitable" to limit the phrase "other proceeding."[3]  Instead, the legislature used broad language.  The common understanding of the term "proceeding" encompasses all types of actions, whether in equity or law.  "The word may be used synonymously with 'action' or 'suit' to describe the entire course of *an action at law or suit in equity*."  Black's Law Dictionary 1204 (emphasis added).  Specifically, the term means "*any application to a court of justice, however made*, for aid in the enforcement of rights, for relief, for redress of injuries, for damages, or for any remedial object."  *Id.* (emphasis added).

**¶16**     Accordingly, the legislature's use of the term "proceeding," without limitation, supports *Cook*'s conclusion that an appeal brought under A.R.S. § 12-2101(G) is not limited

---

[3]     *See, e.g.,* A.R.S. § 6-395.05(B) (1999) (granting receiver title to assets of a bank in receivership "upon which a creditor of the bank could have obtained a lien by legal or *equitable* proceedings") (emphasis added); A.R.S. § 47-9334(E)(3) (Supp. 2003) (granting priority to a perfected security interest in fixtures over a conflicting security interest of an owner of the real property if "[t]he conflicting interest is a lien on the real property obtained by legal or *equitable* proceedings after the security interest was perfected") (emphasis added); A.R.S. § 44-1001(6) (2003) (defining lien to include "a judicial lien obtained by legal or *equitable* process or proceedings") (emphasis added).

to proceedings sounding in equity to determine the amount of recovery. Rather, the legislature intended § 12-2101(G) to apply generally to proceedings to determine the amount of damages.

### III.

¶17 Despite the plain language of A.R.S. § 12-2101(G), *Mezey* articulated several policy reasons for limiting § 12-2101(G) to equitable proceedings. First, the court believed that *Cook*'s holding "would undercut the basic finality requirement of [§] 12-2101(B)."[4] *Mezey*, 204 Ariz. at 604, ¶ 18, 65 P.3d at 985. Second, it reasoned that "*Cook*'s expansive view of jurisdiction is . . . very unfavorable . . . to successful plaintiffs." *Id*. at 605, ¶ 21, 65 P.3d at 986. Third, it believed that *Cook* "misconceive[d] the role of [Arizona Rule of Civil Procedure] 54(b) certification," *id*. at ¶ 22, which requires that all claims or an entire claim against a party be decided before an appeal can be brought. We address each of these reasons in turn.

### A.

¶18 We agree with *Mezey* that finality of judgments is important before instituting appellate review in most cases. But A.R.S. § 12-2101(G) is an express exception to this principle. Thus, *Mezey*'s criticism that *Cook*'s interpretation

---

[4] A.R.S. § 12-2101(B) states, in part, that "a final judgment entered in an action or special proceeding commenced in a superior court" may be appealed.

of § 12-2101(G) undercuts § 12-2101(B) misses the point of § 12-2101(G).  The legislature clearly intended for § 12-2101(G) to permit an appeal of an interlocutory judgment that determined the rights of the parties, with only the amount of recovery left to be decided.  Nevertheless, as *Cook* discussed, there must be some additional express language of finality in the judge's order for the court of appeals to have jurisdiction under § 12-2101(G).  26 Ariz. App. at 168, 547 P.2d at 20.  Such a requirement ensures that appeals can be taken only from interlocutory judgments that finally resolve the "rights of the parties," and in which the court has directed "an accounting or other proceeding to determine the amount of recovery."

**¶19**    Admittedly, *Mezey*'s apprehension that our appellate courts will be overloaded by interlocutory appeals as a result of a broad interpretation of § 12-2101(G) has some theoretical basis.  But since *Cook*, we have found only five reported cases, other than *Mezey*, that cited § 12-2101(G).[5]  Moreover, only one case, *Salerno v. Atlantic Mutual Insurance Co.*, 198 Ariz. 54, 6 P.3d 758 (App. 2000), relied on § 12-2101(G) as the basis for jurisdiction.  Thus, *Mezey*'s fear that *Cook*'s "approach makes a

---

[5]    *See Musa,* 130 Ariz. at 311, 636 P.2d at 89; *Salerno v. Atl. Mut. Ins. Co.*, 198 Ariz. 54, 6 P.3d 758 (App. 2000); *Musa v. Adrian*, 130 Ariz. 326, 636 P.2d 104 (App. 1980); *Pepsi-Cola Metro. Bottling Co. v. Romley*, 118 Ariz. 565, 578 P.2d 994 (App. 1978); *Empress Beauty Supply, Inc. v. Price*, 116 Ariz. 34, 567 P.2d 350 (App. 1977).

12

narrow exception swallow the general rule of finality," and "allows immediate appeal in the routine civil case in which liability alone has been determined," *Mezey*, 204 Ariz. at 605, ¶ 20, 65 P.3d at 986, has simply not occurred because liability and damages are rarely bifurcated.

## B.

¶20    Likewise, for several reasons, *Mezey* overstates the concern that *Cook*'s interpretation of A.R.S. § 12-2101(G) is unfair to plaintiffs because it allows defendants to avoid paying plaintiffs damages and avoid posting supersedeas bonds. *Id.* at ¶ 21. First, as discussed above, there simply has not been a flood of cases that have relied on § 12-2101(G) as the basis for appellate jurisdiction. Thus, *Cook*'s interpretation of § 12-2101(G) has not worked to the disadvantage of plaintiffs. Second, plaintiffs' rights must be balanced with defendants' rights. To be sure, plaintiffs may experience delay if liability determinations are eventually affirmed in § 12-2101(G) appeals. But, on the other hand, defendants experience unnecessary expense when judgments are reversed in § 12-2101(B) appeals. As *Cook* points out, "appellate review may be highly desirable in some interlocutory liability determinations, as for example in cases where a serious question exists as to liability, and a lengthy and possibly unnecessary trial of damages might be averted by interlocutory review." 26 Ariz.

13

App. at 167, 547 P.2d at 19. Consequently, *Cook*'s interpretation of § 12-2101(G) strikes a balance between plaintiffs and defendants, whereas *Mezey* tips the balance almost entirely in favor of plaintiffs.

¶21     Third, trial courts have the discretion to decide whether to certify a judgment as appealable under § 12-2101(G). *Id*. at 168, 547 P.2d at 20 ("The trial court should . . . exercise its sound discretion in such certifications in order to avoid hardship, delay and unnecessary appeals."). Accordingly, a trial court can weigh the competing interests in deciding whether an appeal of an interlocutory judgment may cause undue hardship to a plaintiff.

## c.

¶22     *Mezey* also believed the *Cook* court "misconceive[d] the role of Rule 54(b) certification" when it held that the trial court's Rule 54(b) certification turned an interlocutory judgment under A.R.S. § 12-2101(G) into a final one. 204 Ariz. at 605, ¶ 22, 65 P.3d at 986. But *Cook* did not hold that Rule 54(b) certification made an interlocutory judgment final. Instead, the court stated:

> We agree with the appellee that the judgment here cannot be considered a final judgment as to the Cooks, since it settles only the question of liability and not the amount of damages. We also agree that the insertion of 54(b) determinations in an order which was otherwise substantively unappealable under

14

our law cannot make the order appealable.

*Cook*, 26 Ariz. App. at 165, 547 P.2d at 17. *Cook* distinguished between Rule 54(b) certification, which makes a judgment final, and a trial court's determination that an appeal of an interlocutory judgment may be brought under § 12-2101(G). Like *Mezey*, *Cook* was concerned about the consequences of permitting defendants to appeal every interlocutory liability judgment. In that respect, the court said the following:

> We should not encourage filing of premature appeals where there is a serious question as to whether there has been an interlocutory "determination of the rights of the parties" or whether the only remaining issue is in fact the "amount of recovery." We are also troubled by possible disputes over whether a defendant who fails to take an interlocutory appeal thereafter loses his right to question the liability determination.

*Id*. at 168, 547 P.2d at 20 (footnote omitted).

¶23 Accordingly, *Cook* held that for a judgment to be appealable under § 12-2101(G), a trial judge must use express language that the judgment has finally determined the rights of the parties and is subject to an interlocutory appeal. *Id*. A Rule 54(b) certification, while not necessary, would satisfy the finality requirement, as would other express language in the order indicating finality on the question of the rights of the parties. *Id*. Thus, appealability under § 12-2101(G) turns not on the finality of the judgment, but on the finality of the

15

liability decision and the trial court's discretionary finding that an appeal should lie in the particular case.

**D.**

**¶24**     Finally, *Mezey* relied on *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737 (1976), to support its conclusion that no appeal was permissible in "this very situation."  204 Ariz. at 605, ¶ 20, 65 P.3d at 986.  In *Liberty Mutual*, the Court held that a judgment is not necessarily appealable simply because it includes the language from Rule 54(b) of the Federal Rules of Civil Procedure certifying that the judgment is final.  424 U.S. at 742.  The district court in *Liberty* had granted a partial summary judgment on liability and certified that the judgment was final under Rule 54(b).  *Id.* at 741-42.  The Court disagreed with the proposition that a partial summary judgment on the issue of liability could be made appealable by the inclusion of Rule 54(b) certification, because the case involved only a single claim, not multiple claims or parties, as Rule 54(b) requires.  *Id*. at 742-43.

**¶25**     *Mezey*'s reliance on *Liberty Mutual* is misplaced.  No appeal could be brought in *Liberty Mutual* because the judgment was not final, and no federal statute permitted an appeal of such an interlocutory judgment.[6]  The only possible basis for

---

[6]     Interlocutory appeals are permitted under federal law when the judgment concerns an injunction, 28 U.S.C. § 1292(a)(1), or

16

jurisdiction was 28 U.S.C. § 1292(b), which permits an interlocutory appeal if both the district court and the circuit court consent. *Id.* at 745. Because the appellant had not applied to the circuit court for permission to appeal, even though the district court had certified the matter under Rule 54(b), the circuit court had no jurisdiction over the "appeal." *Id.* As such, *Liberty Mutual* has no application in the present case.

**IV.**

¶26    Since the earliest days of statehood, Arizona has had a provision permitting an appeal from an interlocutory judgment that "determines the rights of the parties," leaving only an accounting "or other proceeding to determine the amount of the recovery." *See* Civ. Code 1913 § 1227(2). Section 12-2101(G) is the current version of this longstanding authority for appellate jurisdiction. And since 1976, *Cook*'s interpretation of § 12-2101(G) has been applied in determining whether such interlocutory judgments could be appealed. *Cf*. *Musa*, 130 Ariz. at 314, 636 P.2d at 92 (citing *Cook* and noting that § 12-2101(G) "has not been limited to judgments in equitable proceedings, but has been extended to interlocutory decisions on the merits where all issues have been determined except the amount of recovery").

when there is a "substantial ground for difference of opinion" over a controlling question of law. 28 U.S.C. § 1292(b). Neither statute is the equivalent of A.R.S. § 12-2101(G).

17

¶27    Despite *Mezey*'s misgivings about *Cook*'s interpretation of § 12-2101(G), we have found no evidence that any of the concerns discussed by the *Mezey* court have seriously undermined the principle of discouraging piecemeal appeals.  In fact, this case is a clear example of the efficacy of *Cook*'s interpretation of § 12-2101(G).  If the State had been unable to obtain appellate review of the trial court's ruling rejecting its statute of limitations defense, it would have gone through a lengthy and unnecessary trial to determine the amount of damages for an unknown number of inmates who had worked at the coupon-processing facility at the prison in Winslow.

¶28    Accordingly, we hold that under A.R.S. § 12-2101(G), "an interlocutory judgment which determines the rights of the parties and directs . . . [a] proceeding to determine the amount of the recovery" can be appealed if the trial court, in the exercise of its sound discretion, expressly directs that the only issue remaining is the amount of recovery.  We further hold that an appeal can be taken from such a judgment even if the proceeding to determine the amount of recovery is not an equitable proceeding.  Consequently, we disapprove of *Mezey*'s limitation on the type of appeals that can be brought under § 12-2101(G).

**V.**

¶**29**    For the above reasons, we approve that portion of the court of appeals' decision which concluded that it had jurisdiction over the appeal under A.R.S. § 12-2101(G).[7]

_____
Michael D. Ryan, Justice


CONCURRING:


_____
Charles E. Jones, Chief Justice


_____
Ruth V. McGregor, Vice Chief Justice


_____
Rebecca White Berch, Justice


_____
Andrew D. Hurwitz, Justice

_____

[7]    Although plaintiffs originally petitioned for review on several non-jurisdictional grounds, we granted review only on the supplemental petition, which raised the question of whether the court of appeals had jurisdiction to decide the appeal.  We held in abeyance our decision as to whether to grant review on the original petition pending our decision here.  Because the original petition for review does not meet the criteria of Rule 23 of the Arizona Rules of Civil Appellate Procedure, we deny review of that petition.