65 P.3d 980

**Deanna Laurel MEZEY,
Plaintiff–Appellee,**

v.

**Lee Val FIORAMONTI, Defendant–
Appellant.**

**No. 1 CA–CV 02–0040.**

Court of Appeals of Arizona,
Division 1, Department C.

April 3, 2003.

Law Offices of Robert C. Houser, P.C. by Robert C. Houser and Franks Bodinet & Park, P.C. by Todd Franks and Kevin A. Park and Frederic G. Lemberg, Phoenix, Attorneys for Plaintiff–Appellee.

Turley, Swan & Childers by Christopher J. Bork and Michael J. Childers, Phoenix, Attorneys for Defendant–Appellant.

## OPINION

LANKFORD, Judge.

¶ 1 An old proverb warns: "Beware of still waters." In this case, traversing the still waters of settled law, we have come upon a hazard particular to judicial navigation: a venerable but wrongly decided case.

¶ 2 The case, *Cook v. Cook,* 26 Ariz.App. 163, 547 P.2d 15 (1976), tells us that we have jurisdiction in any appeal from a determination of liability. It says that a defendant may appeal from such a determination before any determination of damages. According to *Cook,* if the superior court certifies a partial judgment on liability as final under Arizona Rule of Civil Procedure 54(b), then the judgment is appealable. It is appealable under our jurisdictional statute as a judgment that "determines the rights of the parties and directs an accounting or other proceeding to determine the amount of the recovery." Ariz.Rev.Stat. ("A.R.S.") § 12–2101(G) (1994).

¶ 3 We are reluctant to disturb settled law. But after *Cook* spoke to this matter, it has been followed on only a single occasion. *See Salerno v. Atlantic Mut. Ins. Co.,* 198 Ariz. 54, 57–58, ¶ 12, 6 P.3d 758, 761–62 (App. 2000). Moreover, our supreme court has never expressly approved of *Cook's* holding. *See Musa v. Adrian,* 130 Ariz. 311, 314, 636 P.2d 89, 92 (1981) (citing but distinguishing *Cook* ).

¶ 4 Weighing heavily against our desire for stability in the law is our need to avoid deciding cases that we are not autho-

rized to decide. We must respect the limits on our jurisdiction placed upon us by the Arizona Legislature. *See Musa,* 130 Ariz. at 312, 636 P.2d at 90 (appellate court jurisdiction is confined to that provided by statute). Historically, we have been vigilant in doing so. "Our supreme court and this court have traditionally guarded jurisdiction closely." *Pulaski v. Perkins,* 127 Ariz. 216, 219, 619 P.2d 488, 491 (App.1980). An appellate court has the duty to examine its jurisdiction in every appeal when a question exists. *Rueda v. Galvez,* 94 Ariz. 131, 132, 382 P.2d 239, 239 (1963); *Davis v. Cessna Aircraft Corp.,* 168 Ariz. 301, 304, 812 P.2d 1119, 1122 (App. 1991). In examining our jurisdiction, we have determined that the reasoning of *Cook* is incorrect.

¶ 5 The jurisdictional issue arises in this appeal by virtue of a judgment that adjudicates liability as to some of plaintiff's claims, and determines some but not all of the damages. The plaintiff brought an action for conversion, fraudulent conveyance, intentional and negligent infliction of emotional distress, and constructive trust. Plaintiff obtained summary judgment on the conversion and fraudulent conveyance claims. The court decided liability in favor of the plaintiff on these claims only, and granted a partial, incomplete remedy. It imposed a constructive trust on certain personal property and awarded partial damages of $120,300 plus prejudgment interest. It reserved for later disposition claims for damages for additional property, for diminished value of the property subject to the constructive trust, for loss of use of the property, and for additional prejudgment interest. The superior court nevertheless certified its judgment as final and appealable pursuant to Rule 54(b). Plaintiff then filed a motion for new trial, which the court denied.

¶ 6 On appeal, the defendant moved to dismiss for lack of jurisdiction. Another department of this Court ruled on that motion, dismissing the appeal as to the judgment but permitting the appeal from the order denying the new trial motion.[1]

[3] ¶ 7 We decide that we have jurisdiction of the appeal based on the order imposing a constructive trust. Absent that order, and contrary to *Cook,* we would lack jurisdiction over an appeal from a partial judgment on liability. Contrary to the earlier order dismissing part of this appeal, we have no independent jurisdiction over the appeal from the new trial order, which is no more appealable than the underlying judgment to which it relates.

■ ¶ 8 We consider first whether appellate jurisdiction exists over the partial summary judgment. A judgment that adjudicates liability for the plaintiff but does not determine her remedy is not a final, appealable judgment. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). In this respect, Arizona's rule is the same as the federal one. Our Rule 56(c) clearly describes this type of judgment as not final. "A summary judgment, *interlocutory in character,* may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." (Emphasis added).

■ ¶ 9 Nor can a partial judgment on liability be made final and appealable by adding a Rule 54(b) certification of finality. *Liberty Mut. Ins. Co.,* 424 U.S. at 744, 96 S.Ct. 1202. As our supreme court stated in *Musa v. Adrian,* "[Rule 54(b) certification] does not confer jurisdiction if the judgment did not in fact dispose of 'one or more' of the claims." 130 Ariz. at 313, 636 P.2d at 91; *see Davis,* 168 Ariz. at 304, 812 P.2d at 1122 ("Before a trial court may certify a judgment under Rule 54(b), it must find that the judgment is final, that is, 'an ultimate disposition of an individual claim.' ") (quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)).

¶ 10 Such a judgment is not final because it cannot meet the requirement that it resolve "one or more but fewer than all of the claims...." Ariz. R. Civ. P. 54(b). No entire

---

1. The briefs were filed after entry of this order. Because of the posture of this case as an appeal from an order denying a new trial from a summary judgment, however, the briefs fully addressed the merits of the summary judgment itself.

claim is resolved when only its liability portion is decided.[2]

> "The order ... constitutes a grant of partial summary judgment limited to the issue of ... liability. Such judgments are by their terms interlocutory, *see* Fed.R.Civ.P. 56(c), and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of [the federal jurisdictional statute]."

*Liberty Mut. Ins. Co.*, 424 U.S. at 744, 96 S.Ct. 1202. The appeal in this case was taken from just such a non-final judgment.

¶ 11 *Cook v. Cook*, however, reached a different conclusion. It relied not only on Rule 54(b) but also on a specialized provision of our jurisdictional statute. Section 12–2101(G) allows an appeal "from an interlocutory judgment which determines the rights of the parties and directs an accounting or other proceeding to determine the amount of the recovery." *Cook* likened a trial of damages to an accounting and held that a partial judgment on liability could be final even though it left damages unadjudicated. 26 Ariz.App. at 167, 547 P.2d at 19. If the superior court certified such a judgment under Rule 54(b), the court of appeals would entertain the appeal from the judgment. *Id.* at 168, 547 P.2d at 20.

¶ 12 *Cook* expands appellate jurisdiction beyond the apparent intent of the statute upon which our jurisdiction depends.[3] As discussed above, a partial judgment on liability does not qualify as a "final" judgment appealable under A.R.S. § 12–2101(B). To say that the same judgment can be ap-

pealed under paragraph G transforms a narrow exception into permission to appeal in a broad range of cases. It allows the limited jurisdiction for the rare appeal in a specialized accounting proceeding to support wholesale appeals of non-final judgments in ordinary civil cases.

¶ 13 The section 12–2101(G) exception for an accounting is indeed quite narrow.[4] An accounting is a particular equitable proceeding that is employed only in specific situations. *See* 1 Am.Jur.2d *Accounts and Accounting* § 52, at 609, and § 57, at 615 (1994). Among other conditions for an equitable accounting, the accounts to be resolved "are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them." *Dairy Queen v. Wood*, 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). Moreover, an accounting is ordinarily performed in two stages: in the first, the court determines liability (the right to the accounting); in the second, the actual accounting is conducted. 1 Am.Jur.2d *Accounts and Accounting* § 66, at 624.

¶ 14 The accounting proceeding that the statute contemplates as eligible for appeal is thus very different from the usual case of civil liability and damages. An accounting involves a very complex determination of accounts, while in the ordinary civil case the assessment of damages is usually subordinate to the trial of liability. An accounting, too, is inherently a two-stage proceeding, unlike the typical civil case in which a trial ordinarily includes both liability and damages. Finally, an accounting is a relatively

---

2. Of course, the damages part of a claim is necessarily decided against the plaintiff when it is determined there is no liability: Damages cannot be awarded without liability. But when, as in this case, a court rules in favor of plaintiff on liability, there is something important left to be done to finally resolve the claim. That remaining task is to determine the remedy. Conversely, no final judgment is entered when judgment is rendered against a request for a particular remedy—consequential damages—because such a ruling does not dispose of an entire claim. *McAlister v. Citibank*, 171 Ariz. 207, 211, 829 P.2d 1253, 1257 (App.1992). Inclusion of Rule 54(b) language does not alter this fact and is an improper certification of finality. *Id.*

3. "If there is no statute which provides that a judgment or order is appealable, the appellate courts of this state do not have jurisdiction to consider the merits of the question raised on appeal." *Musa*, 130 Ariz. at 312, 636 P.2d at 90.

4. The statute's historical roots are even narrower. Our statute was derived from California's, which allows appeal only prior to an accounting in a real estate redemption action. *See* Cal.Civ. Proc.Code § 904.1 (West 1980); *see also Gunder v. Gunder*, 208 Cal. 559, 282 P. 794, 795 (1929); *Berry v. Berry*, 140 Cal.App.2d 50, 294 P.2d 757, 765 (1956) (stating that when judgment is entered but accounting remains, judgment is not final and not appealable).

rare proceeding, while innumerable cases involving claims for money damages are filed every year. In short, section 12–2101(G) contemplates appeals only in the rare case prior to the unusual, complex and inherently separate accounting phase. We lack any indication that the Legislature intended to sweep within appellate jurisdiction vast numbers of ordinary civil cases involving damages in which liability is decided before damages are awarded.

¶ 15 *Cook* nevertheless gave the statute expansive effect, citing several reasons. First, the court was unable to identify any other similar equitable proceeding to give effect to the statutory reference to "other proceeding to determine the amount of recovery." 26 Ariz.App. at 167, 547 P.2d at 19. Yet there is at least one such proceeding: a tracing to enforce a constructive trust.[5] In such a case, the court imposes a constructive trust on property, and then traces that property or its proceeds to restore it to its rightful owner. *E.g., Harmon v. Harmon,* 126 Ariz. 242, 244 n. 2, 613 P.2d 1298, 1300 (App.1980); *Amtitle Trust Co. v. Fitch,* 25 Ariz.App. 182, 184 n. 2, 541 P.2d 1166, 1168 (1975); *Packer v. Donaldson,* 16 Ariz.App. 294, 301, 492 P.2d 1232, 1239 (1972). An accounting is similar in that it, too, may use tracing. *See* 1 Dan B. Dobbs, *Law of Remedies* § 4.3(5), at 608 (2d ed.1993).

¶ 16 Second, the *Cook* court said, the statute separately provides for interlocutory appeals for other equitable remedies. 26 Ariz. App. at 167, 547 P.2d at 19. The court apparently thought that the "other proceeding" reference in section 12–2101(G) could not refer to injunctions, partitions, or other remedies separately made appealable by other parts of the statute. Accepting this as true, it nevertheless does not demonstrate that section 12–2101(G) encompasses all civil damage cases. This conclusion is merely a reiteration of *Cook's* failure to find an application for the "other proceeding" language in that provision.

¶ 17 As the third and final ground for its holding, *Cook* opined that the abolition of the distinction between law and equity means that "historical considerations" should not dictate the statute's interpretation. 26 Ariz. App. at 167, 547 P.2d at 19. This misses the point of the statute, however. Regardless of whether denominated as in law or equity, the proceedings embraced by the statute are specialized ones. Moreover, they are unusual proceedings in which the remedial tail wags the liability dog: that is, much of the case lies in fashioning a remedy rather than fixing liability. And while there are no distinctions between law and equity in forms of action or trial court jurisdiction, there are distinct, persistent and not purely historical differences between legal and equitable remedies. For example, the difference between an injunction and damages is not merely historical but practical: One remedy constrains specific conduct and the other awards monetary compensation. In any event, the blurring of forms of action at law and equity does not justify expanding a statute which mentions only a single, highly specialized proceeding to include all civil damage actions.

¶ 18 Expanding the statute to encompass the routine civil case would undercut the basic finality requirement of section 12–2101(B). That section permits appeal from "a final judgment." All but one of the remaining parts of A.R.S. § 12–2101 are specific exceptions to the general rule requiring finality. *See Musa,* 130 Ariz. at 312, 636 P.2d at 90 ("In Arizona, with certain exceptions, jurisdiction of appeals is limited to final judgments which dispose of all claims and all parties."); *Rueda,* 94 Ariz. at 132, 382 P.2d at 239 (characterizing the basic limit on appellate jurisdiction as review of final judgments and the rest of A.R.S. § 12–2101 as exceptions to that rule); *Davis,* 168 Ariz. at 304, 812 P.2d at 1122 ("The general rule is that an appeal lies only from a final judgment.").

¶ 19 Preserving the fundamental finality requirement is important, as our supreme court has said:

> The underlying rationale of requiring a final judgment for appealability is to avoid the constant disruption of the trial process,

---

5. In this case, a constructive trust claim was advanced and decided. As we discuss elsewhere in this opinion, we have jurisdiction over that part of the judgment.

to prevent appellate courts from considering issues that may be addressed later in trial, and to promote efficiency, that is, encourage the consolidation in one appeal of all error a litigant feels transpired during the trial.

*Barassi v. Matison*, 130 Ariz. 418, 421, 636 P.2d 1200, 1203 (1981). More succinctly, "[p]ublic policy is against deciding cases piecemeal." *Musa*, 130 Ariz. at 312, 636 P.2d at 90.

¶ 20 The *Cook* approach makes a narrow exception swallow the general rule of finality. It allows immediate appeal in the routine civil case in which liability alone has been determined. Due to the common use of partial summary judgments and the occasional bifurcation of civil trials into liability and damage phases, this could permit appeals routinely in very many cases. The statutes contain no hint that the Arizona Legislature's otherwise consistent creation of specific and narrow exceptions was intended to broadly exempt routine cases from the finality requirement. *Cook* erred in using carefully crafted exceptions to strike such a great blow against the finality principle. As the United States Supreme Court stated in this very situation, an appeal from a partial judgment on liability:

> Were we to sustain the procedure followed here, we would condone a practice whereby a district court in virtually any case before it might render an interlocutory decision on the question of liability of the defendant, and the defendant would thereupon be permitted to appeal to the court of appeals without satisfying any of the requirements that Congress carefully set forth.

*Liberty Mut. Ins. Co.*, 424 U.S. at 745–46, 96 S.Ct. 1202.

¶ 21 *Cook's* expansive view of jurisdiction is also very unfavorable, and unfairly so, to successful plaintiffs. Ordinarily, a plaintiff who prevails on liability can proceed to prove damages and obtain judgment. Unless superseded, the judgment can be enforced and plaintiff is thereby compensated. Supersedeas requires that the judgment debtor give sufficient security to assure that plaintiff as judgment creditor will be compensated if he prevails on appeal. *See* Ariz. R. Civ.App. P. 7(a); Jefferson L. Lankford, Supersedeas in Arizona Appeals, Ariz. B.J. Feb.-Mar.1985, at 29. Under *Cook*, however, the defendant may bring an appeal without either compensating plaintiff or superseding the judgment because the partial judgment awards no damages. Thus, a plaintiff is denied compensation or assurance of compensation, and the defendant gets a "free ride" on appeal, neither paying compensation nor providing security for payment.[6]

¶ 22 *Cook* also misconceives the role of Rule 54(b) certification. It says that if a judgment is certified, then the appellate court may proceed under section 12–2101(G) jurisdiction. 26 Ariz.App. at 168, 547 P.2d at 20. But certification presupposes an order that decides an entire claim. *See* Ariz. R. Civ. P. 54(b). "Merely including a Rule 54(b) determination of finality in a judgment does not make the judgment appealable if there has not been adjudication of the entire claim." 1 *Arizona Appellate Handbook* § 3.3.1.6.4, at 3–13. In other words, certifying the judgment does not confer jurisdiction if the judgment does not meet the Rule 54(b) requirement of deciding either an entire claim or all claims against at least one party. *Musa*, 130 Ariz. at 313, 636 P.2d at 91.

¶ 23 If an order qualifies under section 12–2101(G) for appeal, it needs no Rule 54(b) certification: The statute allows the appeal based on the nature of the order.[7] Indeed,

---

**6.** It is possible that a plaintiff would be permitted to proceed because a superior court retains jurisdiction to continue with the remainder of the case after the part that has been decided by a Rule 54(b) judgment has been appealed. 1 *Arizona Appellate Handbook* § 3.3.1.6.2, at 3–11 (Sheldon H. Weisberg & Paul G. Ulrich eds., 4th ed.2000). However, the trial court is under no obligation to proceed and may well defer the damages phase until liability is decided on appeal. A busy court would likely be tempted to postpone a damages trial in the hope that the appeal will obviate the need for it. Indeed, avoiding the damages trial appears to be the principal reason for certifying such partial judgments as appealable in the first place.

**7.** Certain kinds of decisions of the superior court are appealable without a [Rule] 54(b) determination even though they are not final judgments in the sense that nothing else in the action remains

no Rule 54(b) determination can even be made in such a case because a judgment as to liability only does not qualify as a decision of an entire claim and thus cannot be certified. *See Liberty Mut. Ins. Co.*, 424 U.S. at 744, 96 S.Ct. 1202; *Davis*, 168 Ariz. at 304, 812 P.2d at 1122. In short, Rule 54(b) certification is superfluous in a section 12–2101(G) case, and *Cook* erred by requiring such certification as a condition of appeal.

¶ 24 Part of the judgment before us is nevertheless appealable. The superior court imposed a constructive trust. The court identified property subject to the trust but left to future proceedings the disposition of property not within defendant's control. It also made no effort to trace trust property into other forms. As discussed above, such a constructive trust proceeding is one similar to an accounting action and therefore the court's order is appealable under section 12–2101(G) even though some aspects of the remedy remain unresolved. The order for the constructive trust properly rests on the determination of liability for conversion and fraudulent conveyance.[8] We therefore reinstate this part of the appeal, which had been dismissed on motion by another department of this Court. Although the claim for infliction of emotional distress and some damages are as yet undetermined, section 12–2101(G) confers jurisdiction over the judgment relating to the constructive trust.

¶ 25 One more jurisdictional question remains. This appeal was taken not only from the judgment, but also from the order denying the motion for new trial. This Court previously determined that it had jur-

isdiction of the appeal from that order even though we lacked jurisdiction over the underlying judgment. Because the new trial motion addressed a non-final judgment, our prior order determined that an order denying a new trial creates a right to appeal even though the motion for new trial addressed a judgment not itself appealable.

¶ 26 That prior decision was incorrect. We have no jurisdiction over an order denying a new trial from a non-final partial summary judgment. A party may not create access to appellate review merely by filing a new trial motion from a non-appealable interlocutory order.

¶ 27 The statute and its underlying policy of finality cannot be so easily circumvented. If we were to allow such appeals, then every partial judgment would be appealable at the discretion of the parties, who would need only file a new trial motion attacking it. Control of appellate jurisdiction would be ceded to the parties and appellate jurisdiction would be virtually unlimited.

¶ 28 Our statute does not confer such jurisdiction. Although perhaps not the intuitive answer, the applicable jurisdictional provision is not the one for appeals from new trial orders, but the one for special orders after final judgments. That is because the underlying order is a summary judgment rather than a judgment after trial. Although appeals are authorized from orders denying new trials by A.R.S. § 12–2101(F)(1), that applies only to orders entered after an actual trial; when a new trial is addressed to a summary judgment, the appeal is authorized instead by A.R.S. § 12–2101(C). *Engineers*

---

to be adjudicated. These are specific types of decisions listed in subsections of A.R.S. § 12–2101 and elsewhere authorizing the appeal of a particular kind of decision.

*Pulaski*, 127 Ariz. at 218 n. 3, 619 P.2d at 490; *see Bulova Watch Co. v. Super Dep't Stores of Ariz.*, 4 Ariz.App. 553, 555, 422 P.2d 184, 186 (1967) ("[A]n interlocutory order which is made appealable by statute does not require the express 'determination and direction' [of appealability under Rule 54(b) ].").

8. A constructive trust is a remedial device that "may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled." 76 Am. Jur.2d *Trusts* § 205, at 232 (1994); *see also In re*

*Rose's Estate*, 108 Ariz. 101, 493 P.2d 112 (1972), *supplemented, rehearing denied*, 108 Ariz. 207, 495 P.2d 138 (1972) (constructive trust appropriate when property obtained through any means which render it unconscionable for legal title holder to continue to retain and enjoy its beneficial interest). "Restitution by way of constructive trust and similar remedies may be appropriate for . . . conversion of goods [or] for benefits transferred because of fraud. . . ." Dobbs, 1 *Law of Remedies* § 4.3(2), at 597–98. The superior court's order imposing a constructive trust arose from its grant of partial summary judgment against Fioramonti for fraudulent conveyance and conversion of plaintiff's property.

*v. Sharpe*, 117 Ariz. 413, 416, 573 P.2d 487, 490 (1977).

> [B]ecause there was, strictly speaking, no trial below, it would strain statutory construction to find that appellant's basis for appeal rests on A.R.S. § 12–2101(F). However, we believe that A.R.S. § 12–2101(C), which provides for appeal from any special order made after final judgment is broad enough to encompass the appeal in this case.

*Id.*

¶ 29 The new trial order in this case was not entered after trial, but relates to a summary judgment. A.R.S. § 12–2101(C) is thus the statute upon which appellate jurisdiction depends. It requires that the order denying the new trial be an "order made after *final* judgment." (Emphasis added). *See Engineers*, 117 Ariz. at 416, 573 P.2d at 490 (emphasizing that statute conferred jurisdiction because the order "came after the entry of a final judgment ...").

¶ 30 By requiring an underlying final judgment, our statute prevents the creation of a right to appeal by merely filing a new trial motion. Put another way, filing a motion attacking a non-final decision does not somehow make that decision final if it was not final before it was challenged by motion.

¶ 31 In sum, we determine that we have jurisdiction under section 12–2101(G) because the judgment establishes liability for a constructive trust. We therefore reinstate the appeal from the judgment imposing a constructive trust. We now address the merits of that appeal.

¶ 32 The relevant facts are as follows. For more than thirteen of the thirty-three years he was married to Deanna Lynne Mezey ("Wife"), Armand Mezey ("Husband") maintained an extramarital relationship with Defendant Fioramonti. During that relationship, Husband gave substantial property to Fioramonti, including jewelry, a portable spa, a bed, appliances, a home entertainment center with a stereo and television, and $120,300 in cash. During the Mezeys' divorce proceedings, the court determined that these transfers were "not expenditures for which Husband had Wife's consent," were "not valid community expenses," and constituted "waste" or "excessive or abnormal expenditures ... or fraudulent disposition of community, joint tenancy or other property held in common." *Mezey v. Mezey*, No. DR 97–10848 (Maricopa County).

¶ 33 Wife sued Fioramonti on theories including conversion, fraudulent conveyance, and constructive trust. After Fioramonti answered, Wife moved for partial summary judgment on these claims. In support, Wife filed an affidavit stating that Husband could not have paid for or acquired the transferred property absent community funds or efforts. Wife further stated that she had not been aware of Husband's transfers to Fioramonti when they were made and that she had neither authorized nor consented to them. The superior court ultimately granted Wife's motion and entered partial judgment in her favor, determining that Fioramonti had converted and fraudulently conveyed Wife's property and that Fioramonti held in constructive trust that property "still in her possession or under her control."

¶ 34 Fioramonti thereafter filed a Motion for New Trial or Alternatively to Vacate Judgment, which the superior court denied.[9] Fioramonti now appeals, reviving the following issues from her new trial motion: (1) The Rule 54(b) judgment was improper as to the conversion claim; (2) the judgment is contrary to law as to both claims because she lacked the requisite bad faith; and (3) the Arizona fraudulent conveyance statutes are inapplicable.[10]

---

**9.** We note that shortly after Fioramonti filed the motion for new trial, she filed a "Supplement to Previously Filed Motion for New Trial or in the Alternative Motion to Vacate Judgment" (the "Supplement") raising a statute of limitations defense to the conversion claim. However, because Fioramonti never sought leave to file the Supplement nor sought to amend her answer, the superior court determined that she had waived the defense. We agree that Fioramonti waived the argument and therefore do not consider the Supplement on appeal.

**10.** Wife's contention that Fioramonti has waived most of the substantive arguments made in her motion by failing to raise excusable neglect on appeal reads the motion too narrowly. In addition to seeking relief under Arizona Rule of Civil

¶ 35 We first consider whether the court's order properly granted summary judgment for conversion as a basis for the constructive trust. It did. Neither of Fioramonti's two arguments merit reversal.

¶ 36 Fioramonti first argues that the Rule 54(b) judgment should not contain a ruling on conversion because the corresponding minute entry does not mention it. However, Wife sought summary judgment on the issue, the undisputed facts supported the judgment as a matter of law, and the superior court granted the motion without limitation.

¶ 37 We also disagree with Fioramonti's contention that her alleged good faith defeats the conversion claim. Indeed, the authority she cites undercuts her argument. Conversion involves an act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with that person's rights in the property. *Scott v. Allstate Ins. Co.*, 27 Ariz.App. 236, 240, 553 P.2d 1221, 1225 (App.1976). Therefore, "[n]either good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action." *Id.* Consequently, Fioramonti's alleged good faith is immaterial.

¶ 38 Although Fioramonti also argues that she acted properly because A.R.S. § 25–214(C) (2000) authorized Husband to transfer community assets to her without Wife's consent, this alternative argument also lacks any merit. Husband had no absolute right to manage or dispose of community property under A.R.S. § 25–214(C). A husband's statutory rights to act with respect to marital property remain subject to his fiduciary duty to his wife's interest in the property. *See Zork Hardware Co. v. Gottlieb*, 170 Ariz. 5, 6, 821 P.2d 272, 273 (App.1991) (the powers conferred by statute are to be exercised for the benefit of the community, and not for the benefit of one spouse's separate estate or interests). The New Mexico Supreme Court has correctly explained the rule of law:

> Summarizing the law from other community property jurisdictions, we determine the best rule to be:
>
> (1) each spouse has the power to manage and dispose of the community's personal property;
>
> (2) subject to a fiduciary duty to the other spouse; and
>
> (3) absent intervening equities, a gift of substantial community property to a third person without the other spouse's consent may be revoked and set aside for the benefit of the aggrieved spouse.

*Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 787 P.2d 428, 433 (1990); *see also Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex.Civ.App.1975) (if a spouse disposes of community property in fraud of the other spouse's rights, the aggrieved spouse may have recourse against the recipient of the property). Husband owed Wife a fiduciary duty, and his power to convey property on behalf of the community does not relieve Fioramonti of liability for conversion. Fioramonti's acceptance of the gift of the property was an exercise of dominion inconsistent with Wife's rights. Summary judgment as to Fioramonti's conversion of Wife's property was proper.

¶ 39 Although a constructive trust may be ordered for conversion, Dobbs, 1 *Law of Remedies* § 4.3(2), at 597–98, the superior court also found fraudulent conveyance. Accordingly, we also review that finding.

¶ 40 We first address whether Wife is protected by the Arizona fraudulent conveyance statutes. Arizona has adopted the Uniform Fraudulent Transfer Act, A.R.S. §§ 44–1001 to –1010 (1994) (the "Act"). Fioramonti argues that the Act is inapplicable because the Mezeys did not have a creditor-debtor relationship. However, Wife is a creditor under the Act because she is "a person who has a claim," A.R.S. § 44–

---

Procedure 60(c)(1) based upon excusable neglect, Fioramonti asserted that she was deprived of a fair trial pursuant to Arizona Rule of Civil Procedure 59(a)(1), the judgment was not justified by the evidence and was contrary to law under Arizona Rule of Civil Procedure 59(a)(8), and the judgment was not justified under the reserve clause of Arizona Rule of Civil Procedure 60(c)(6). Fioramonti's failure to raise excusable neglect on appeal does not waive her remaining arguments.

1001(3), that is, "a right to payment, whether or not the right is reduced to judgment...." A.R.S. § 44–1001(2). This Court has previously applied the Act to a transfer made by one spouse after the other filed a petition for dissolution. *Gerow v. Covill,* 192 Ariz. 9, 16–17, ¶¶ 32–36, 960 P.2d 55, 62–63 (App.1998) (finding fraudulent conveyance). Although Husband apparently made the transfers at issue here before Wife filed her petition, the Act applies to claims that arise either "before or after the transfer was made." [11] A.R.S. § 44–1004(A). Wife's claims are, therefore, claims of a creditor protected by the Act.

¶ 41 The evidence fully supports the superior court's determination that Husband committed transfers in violation of the Act. A transfer is fraudulent when made with "actual intent to hinder, delay or defraud any creditor of the debtor." A.R.S. § 44–1004(A)(1); *see also Gerow,* 192 Ariz. at 16–17, ¶¶ 32–36, 960 P.2d at 62–63 (husband fraudulently conveyed the assets of a sole proprietorship to defraud his wife of her interest). Under the Act, the superior court was permitted to infer Husband's intent from the uncontroverted facts that he concealed from Wife his transfers of property and money to Fioramonti, he ultimately absconded, he generally removed and concealed assets from Wife, Fioramonti failed to establish equivalent value transferred as consideration for the assets, and Fioramonti admitted that Husband made the transfers to her in contemplation of a divorce action. *See* A.R.S. §§ 44–1004(B)(3), (4), (6), (7), and (8). The evidence supported the court's determination that Husband had the requisite intent for a

fraudulent conveyance without contradiction by any evidence from Fioramonti.

¶ 42 Moreover, Fioramonti failed to present sufficient evidence of good faith and fair value to avoid liability for Husband's fraudulent conveyances. Although a transfer is not void against a person acting in good faith who gives reasonably equivalent value, A.R.S. § 44–1008(A), Fioramonti presented no evidence to characterize herself as such a person. In attempting to create disputes of material fact on the good faith and reasonably equivalent value issues, she submitted an affidavit opposing summary judgment,[12] but her evidence was neither competent nor admissible.[13]

¶ 43 Equally unavailing are Fioramonti's arguments that she received the property from Husband in good faith. We have already rejected Fioramonti's A.R.S. § 25–214(C) argument: The statute provides no shield for Fioramonti as a third-party recipient of community property Husband transferred in violation of the statute. We also reject Fioramonti's assertion of good faith based on her expectation of a future marriage to Husband and her belief that the cash and property were Husband's separate property. Fioramonti presented no admissible evidence to support this contention. Nor do Husband's alleged promises to marry Fioramonti at an undetermined future date demonstrate good faith in taking Wife's property. Fioramonti is charged with knowledge of the facts that any reasonable investigation of Husband's assertions concerning the separation of his financial interests from those of

**11.** Although Fioramonti asserts that it would be unfair to hold her responsible for funds and property Husband transferred years ago, this is a statute of limitations affirmative defense. The Act precludes claims for relief for fraudulent conveyance only when they are not brought within "four years after the transfer was made or the obligation was incurred." A.R.S. § 44–1009(1). Fioramonti did not timely raise a statute of limitations defense in the superior court.

**12.** We confine our analysis to Fioramonti's first affidavit, which was before the superior court when the motion for summary judgment was pending. Our analysis does not extend to Fioramonti's later affidavit, which she attached to the motion for new trial. The second affidavit does

not contain newly discovered evidence that "with reasonable diligence could not have been discovered and produced at the trial" or "by due diligence could not have been discovered in time to move for a new trial." Ariz. R. Civ. P. 59(a)(4), 60(c)(2). Rather, the second affidavit refers to events and facts well known to Fioramonti before she filed her response to the motion for partial summary judgment.

**13.** Rule 56(e) requires opposing affidavits to be based "on personal knowledge" and set forth "such facts as would be admissible in evidence." Fioramonti failed to meet these standards. Her affidavit contained mainly inadmissible hearsay and assertions for which she had no personal knowledge.

Wife would have revealed, even though she did not undertake any such investigation. *See Hall v. World Sav. & Loan Ass'n,* 189 Ariz. 495, 501, 943 P.2d 855, 861 (1997) (lender charged "with such knowledge as a proper examination of the record would reveal even though he does not in fact examine the record"). Husband's statements do not support Fioramonti's good faith.

¶ 44 Because the record reveals no evidence of Fioramonti's good faith, she is liable in tort for her involvement in the fraudulent conveyance, regardless of whether she took for fair value. *See* A.R.S. § 44–1008(A). The transfers are voidable. The constructive trust was proper.

¶ 45 Accordingly, we affirm.

CONCURRING: SHELDON H. WEISBERG, and PATRICK IRVINE, Judges.