IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

WESTBROOK RENTAL LLC,
*Plaintiff/Appellee*,

*v.*

MICHAEL GOODMAN,
*Defendant/Appellant*.

No. 2 CA-CV 2024-0146
Filed July 16, 2025

_____

Appeal from the Superior Court in Maricopa County
No. CV2023092354
The Honorable Rodrick Coffey, Judge

**AFFIRMED**

_____

COUNSEL

Berkshire Law Office PLLC, Tempe
By Keith Berkshire and Alexandra Sandlin
*Counsel for Plaintiff/Appellee*

Jaburg & Wilk P.C., Phoenix
By Ilya Prokopets, David L. Allen, and Mitchell Reichman
*Counsel for Defendant/Appellant*

---

**OPINION**

---

Judge Sklar authored the opinion of the Court, in which Judge Vásquez concurred and Presiding Judge Eckerstrom dissented.

---

S K L A R, Judge:

¶1 Under A.R.S. § 12-1191, a plaintiff in a pending action may record a lis pendens if the "action affect[s] title to real property." But if a lis pendens is "groundless," A.R.S. § 33-420(B) entitles the property owner to both an order clearing title and attorney fees. Section 33-420(A) also entitles the property owner to damages and attorney fees if the plaintiff "know[s] or ha[s] reason to know" the lis pendens is "groundless." In this case, we address whether a lis pendens is groundless where the property owner is not a party to the pending action.

¶2 The issue arises out of a community-property dispute in Michael Goodman and Angela Wilson-Goodman's divorce. While dissolution proceedings were pending, Angela formed Westbrook Rental, LLC, which acquired title to real property. Michael recorded a lis pendens on that property, believing—based on a now-reversed court order—that Westbrook had acquired the property using community funds. But Michael never joined Westbrook as a party in the dissolution case. Nor did he otherwise sue it.

¶3 We conclude that Michael's failure to join or sue Westbrook rendered the lis pendens groundless. Without Westbrook as a party, the dissolution court had no power to enter any order that could have affected Westbrook's title to its property. Although Michael has released the lis pendens and mooted any issues concerning title, we still conclude that Westbrook was entitled to attorney fees under Section 33-420(B). We likewise conclude that Michael knew or should have known that the lis pendens was groundless, entitling Westbrook to damages and attorney fees under Section 33-420(A). Because the trial court reached the same conclusion, we affirm its judgment.

**BACKGROUND**

¶4 Michael and Angela married in 2000. Prior to the marriage, they executed a premarital agreement, which, among other things, identified Angela's law practice as separate property. In 2016, Angela and

another person formed T&A Productions, LLC, in which Angela continues to own a fifty percent interest.

¶5          Michael petitioned for dissolution in December 2019, and Angela accepted service in February 2020.  In July 2020, Angela formed Westbrook, which has no other members.  On September 9, 2021, T&A lent Westbrook $430,000, which Westbrook used to purchase the property.  T&A retained a deed of trust.

¶6          Michael moved for partial summary judgment in the dissolution action, requesting that the dissolution court find Angela's law firm to be community property.  In March 2023, the court determined that Angela's law firm was community property.

¶7          Soon thereafter, Michael recorded a "Notice of Lis Pendens," with the Maricopa County Recorder, on the property owned by Westbrook.  Angela—in her capacity as Westbrook's representative—sent a letter to Michael, demanding the document be released as improperly recorded.  Michael refused to release the lis pendens.

¶8          Westbrook then sued Michael in this case, seeking, among other things, the release of the lis pendens as improper under Section 33-420.  Michael moved to consolidate this case with the dissolution action, which the dissolution court denied.  Westbrook then moved to quash and expunge the lis pendens, arguing it was groundless.  After an evidentiary hearing, the trial court concluded that the lis pendens was groundless.  It ordered Michael to immediately release the lis pendens and awarded Westbrook $5,000 in damages and $30,000 in attorney fees.  Michael then appealed.

¶9          After Michael had filed his notice of appeal in this matter, this court in a separate case reversed the dissolution court's entry of partial summary judgment.  *In re Marriage of Goodman & Wilson-Goodman*, 2 CA-CV 2023-0129, ¶ 1, 2024 WL 1717127 (Ariz. App. Apr. 22, 2024) (mem. decision).  We concluded that Angela's law firm is her separate property.  *Id.*  Michael then released the lis pendens.

**MOOTNESS**

¶10          Westbrook first argues that we lack subject-matter jurisdiction over this appeal.  Specifically, it argues that our conclusion that Angela's law firm is separate property moots Michael's community-property arguments regarding his claim to any profits of that

law firm. Michael disagrees, arguing that the damages, attorney fees, and costs are still at issue. We review de novo whether an issue is moot on appeal. *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, ¶ 11 (2021).

¶11    "A case is moot when it seeks to determine an abstract question which does not arise upon existing facts or rights." *Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229 (App. 1985). To the extent the validity of the lis pendens itself is an issue, it is moot. Michael has released the lis pendens. He also tacitly acknowledges that the lis pendens has no basis, given this court's decision on the separate-property character of the law firm. The issues of damages, attorney fees, and costs, however, are not moot. Thus, the question of whether the lis pendens was groundless is not moot to the extent it affects these issues.

## GROUNDLESSNESS OF LIS PENDENS

¶12    Michael argues that the trial court erred in concluding that he had recorded a groundless lis pendens and in awarding Westbrook damages and attorney fees. Although we review the trial court's legal determinations de novo, we defer to the court's factual findings unless they are clearly erroneous. *See In re Ghostley*, 248 Ariz. 112, ¶¶ 8, 21 (App. 2020).

### I.    Statutes and case law provide remedies for a groundless lis pendens.

¶13    We begin our analysis with A.R.S. § 12-1191(A), which allows a party to "file in the office of the recorder . . . a notice of the pendency" of an action that "affect[s] title to real property." This notice is often called a lis pendens. It must include, among other things, "the object of the action or affirmative defense, the relief demanded and a description of the property affected." *Id.* Although the statute uses the verb "file," this opinion uses the verb "record" to emphasize that the lis pendens is not a document filed with a court clerk.

¶14    As noted, Section 33-420 imposes consequences for wrongful recordation of a lis pendens, as well as of other documents such as mechanic's liens. Where such a document is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid," Section 33-420(B) allows a property owner to bring a special action to immediately release the lis pendens and clear title to the property. Subsection (B) also authorizes an award of reasonable attorney fees and costs.

¶15 In addition, subsection (A) provides that when the party who recorded the lis pendens does so "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid," that party is liable for damages of not less than $5,000. The parties here focus on whether the lis pendens was groundless.

¶16 A lis pendens is groundless where "the claim that the underlying action is one affecting title to real property has no arguable basis or is not supported by any credible evidence." *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 621 (App. 1991). The recording party "must have more than a subjective, good faith belief in the propriety of its recording to escape liability under § 33-420(A)." *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, ¶ 31 (App. 2011). Merely characterizing a claim as one affecting real property is an insufficient basis to record a lis pendens. *Santa Fe Ridge Homeowners' Ass'n. v. Bartschi*, 219 Ariz. 391, ¶¶ 20-22 (App. 2008) ("action that *may* result in a lien" insufficient to affect title to real property (emphasis added)). Generally, a court presumes a lis pendens is groundless if it is "not authorized by statute, judgment or other specific legal authority." § 33-420(D).

## II. The lis pendens was groundless because Westbrook was not a party, so Westbrook is entitled to attorney fees.

¶17 Westbrook argues that Michael's lis pendens was groundless because he never made a claim against Westbrook as the title holder of the real property. Absent such a claim, Westbrook reasons, the dissolution court had no power to fashion relief that affected title to Westbrook's property. Michael disagrees, arguing that at the time he recorded the lis pendens, he had a valid basis for believing that Westbrook used community assets to purchase its property. In his view, his claim against those assets amounts to an action affecting title to real property.

### A. The statutory language and due process require Michael to name Westbrook as a party for the action to affect title.

¶18 Consistent with Section 12-1191's requirement of "an action," this court has explained that a lis pendens "may be recorded when a lawsuit is filed." *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 10. Although not stated explicitly, this language has been consistently understood to require that the lawsuit be filed against the property owner or, in appropriate cases, the property itself. *E.g.*, *Tucson Ests., Inc. v. Superior*

*Court*, 151 Ariz. 600, 602-05 (App. 1986) (plaintiffs sued to enforce rights incident to title to golf course and recorded lis pendens on property); *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 216-19 (App. 1987) (plaintiff sued to foreclose liens, recorded lis pendens, and, upon learning of sale of property, amended complaint to add transferee); *Evergreen W., Inc.*, 167 Ariz. at 618, 621 (concluding that lis pendens was proper where plaintiff sued owner of property for specific performance); *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶¶ 2-3, 17-23 (plaintiff sued to enforce covenants and recorded lis pendens on property); *Norriega v. Machado*, 179 Ariz. 348, 352-53 (App. 1994) (property may be party in forfeiture suit); A.R.S. § 13-4307(B) (authorizing lis pendens in real-property forfeiture proceedings).

¶19        Michael has cited no case, and we have found none, where a lis pendens has been upheld when neither the property owner nor the property is party to a lawsuit. Instead, Michael argues in his reply brief that an action could be initiated after a lis pendens is recorded. Our dissenting colleague likewise reasons that the text of Section 12-1191 does not "suggest that joining the titleholder as a party must be an *implicit* pre-condition" of a lis pendens. We disagree. Section 12-1191(A)'s text requires "an action affecting title to real property." Until joinder of the titleholder or, as appropriate, the property, there is no such action. The statute does not say "future action" or "potential action." *See Roberts v. State*, 253 Ariz. 259, ¶ 20 (2022) (providing that "court will not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions" (quoting *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965))).

¶20        Requiring an action against Westbrook is consistent with due process, which would require it to be a party before an action could affect its title to property. Generally, "[i]t is a violation of due process for a judgment to be binding on and enforceable against a litigant who was not a party or a privy, and therefore has never had an opportunity to be heard." *Specialty Cos. Grp., LLC v. Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, ¶ 22 (2021) (quoting *Associated Aviation Underwriters v. Wood*, 209 Ariz. 137, ¶ 151 (App. 2004)). As applied here, Michael does not meaningfully argue that due process would allow a judgment to be entered affecting Westbrook's title without an action against it. Nor do we conceive how this could occur.

¶21        As a result, our dissenting colleague's concerns about providing notice of the action to third parties are also misplaced. Unless Westbrook is named as a party, the dissent has not identified any limitations that the dissolution action might place on the rights of third

parties. While future actions could conceivably interfere with such rights, the statutory language does not render this possibility sufficient to justify a lis pendens.

### B. Under Arizona Rule of Civil Procedure 19(a), Westbrook was a necessary party without which the dissolution court had limited power to fashion relief.

**¶22** Both statute and court rule provide due process to parties such as Westbrook. First, A.R.S. § 25-314(D) allows dissolution courts to "join additional parties necessary for the exercise of its authority." *See also* Ariz. R. Civ. P. 19(a) (providing for joinder of necessary parties); Ariz. R. Fam. Law P. 33(c) (incorporating civil rules for joinder). Our court has recently concluded that joinder under this statute may be necessary when an order could impair a third party's interest in property. *Whitt v. Meza*, 257 Ariz. 176, ¶¶ 22-25 (App. 2024) (instructing court on remand to determine whether co-owner of bank account that arguably contained community funds was necessary party).

**¶23** Neither party suggests that joinder under Section 25-314(D) was unavailable here. Our dissenting colleague ignores the statute altogether. We believe it was available. This undermines Michael's argument that finding the lis pendens groundless would invite improper behavior. He argues that spouses would be allowed to "unilaterally funnel community money into newly formed entities and/or newly purchased real property and, as a result, claim that the new property is that spouse's separate property and put the preexisting community money out of reach of the other spouse." Not so. The spouse challenging that conduct would simply need to invoke Section 25-314(D) and join the newly formed entity if that spouse sought relief affecting the entity's title.

**¶24** Next, requiring joinder under Section 25-314(D) is consistent with Rule 19(a) of the Arizona Rules of Civil Procedure—which applies in dissolution cases under Rule 33(c) of the Arizona Rules of Family Law Procedure. Rule 19(a) provides, in relevant part, that a person "must be joined as a party" when "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Ariz. R. Civ. P. 19(a)(1)(B)(i). Here, because Westbrook's interest in the property would necessarily be impaired or impeded by a judgment affecting title to that property, Westbrook could and should have been joined.

¶25 Our dissenting colleague, however, reasons that as Westbrook's sole member, Angela was "well-situated to advocate" for its interests regardless of Westbrook's joinder. He concludes that Rule 19(a)(1) does not render Westbrook a necessary party because, "as a practical matter," Angela could protect its interests. *See* Ariz. R. Civ. P. 19(a)(1)(B)(i). But like much of our colleague's dissent, this analysis ignores Westbrook's separate corporate form. At one point, our colleague even asserts that the "facts support more than a good faith belief that Angela owned the real property."

¶26 This view is contrary to Arizona law. As the Arizona Limited Liability Company Act provides, "A limited liability company is an entity distinct from its member." A.R.S. § 29-3108(A). It likewise provides, "A debt, obligation or other liability of a limited liability company is solely the debt, obligation or other liability of the company." A.R.S. § 29-3304(A). Thus, a member "is not personally liable, directly or indirectly . . . for a debt, obligation or other liability of the company . . . solely by reason of being or acting as a member or manager." *Id.* Nor is a member's obligation the LLC's responsibility. Rather, the "exclusive remedy" for a member's judgment creditor is a charging order, which entitles the creditor to be paid "any distribution that otherwise would be paid to the judgment debtor." A.R.S. § 29-3503(A), (E). This statutory scheme cannot reasonably be read to treat Angela as the owner of Westbrook's property.

¶27 Undoubtedly, Angela would want to protect Westbrook's assets. She is, after all, its sole member. But under our statutory scheme, it does not follow that Westbrook can, "as a practical matter," protect its interests without being a party. *See* Ariz. R. Civ. P. 19(a)(1)(B)(i). Frequently, a member's interests may diverge from those of the LLC, such as when an LLC has limited assets or equity. And as litigation progresses, interests that are aligned may diverge, such as in settlement negotiations. The dissent ignores these and numerous other possibilities in which an LLC could not adequately protect its interests without being joined. We thus cannot agree that Angela's status as a party sufficiently protects Westbrook's interests to avoid rendering Westbrook a necessary party.

### C. The law firm's separate or community characterization is irrelevant to the groundlessness analysis.

¶28 Much of Michael's briefing is focused on whether he had a colorable basis for believing that the funds used to acquire Westbrook's property were community assets. In Michael's view, he had such a basis given that the dissolution court had designated the law firm as community

property and Angela had little other income.  Hence, he argues that his lis pendens was not groundless because he had an "arguable basis" that was "supported by credible evidence" to believe the dissolution action affected title to real property.  *See Evergreen W., Inc.*, 167 Ariz. at 621 (identifying "arguable basis" and "credible evidence" standard).  Our dissenting colleague engages in a similar analysis.

¶29     But their analyses miss the point.  Michael and the dissent plausibly explain how Westbrook's purchase of the property could have been funded with what Michael reasonably believed at the time to be community assets.  And as Michael points out, the dissolution court has broad powers to equitably divide community property.  *See* A.R.S. § 25-318(A) (requiring court to divide community property "equitably, though not necessarily in kind").  But neither Michael nor the dissent has cited any authority suggesting that these powers extend so broadly as to allow the court to enter orders affecting title to property owned by a non-party.  And our analysis above explains why it could not.

¶30     This limitation on the dissolution court's authority is illustrated by a case discussed extensively by both parties, *Gerow v. Covill*, 192 Ariz. 9 (App. 1998).  There, after the wife had served the husband with a petition for dissolution, the husband transferred clients from his sole proprietorship to a corporation solely owned by a third party.  *Id.* ¶¶ 2-4, 10.  The wife claimed the husband was an owner of that corporation.  *Id.* ¶ 8.  The trial court awarded wife one-half of the husband's ownership interest in the corporation.  *Id.* ¶ 11.

¶31     Importantly, though, that award was effective only as between the husband and wife.  *Id.*  As against the third party, the husband's ownership in the corporation would be determined separately, by "consent or by adjudication" involving that party.  *Id.*  Thus, the third party was not a required party in the dissolution because the wife's requested relief did not negatively impact the third party's title to the allegedly fraudulently transferred property.  *Id.* ¶ 22.

¶32     *Gerow* illustrates the limits of the dissolution court's authority absent joinder of the title holder.  *Id.* ¶¶ 18-23.  As the court there recognized, courts may fashion relief among the parties in ways that avoid injuriously affecting a non-party's rights, such as title to property.  *Id.* ¶¶ 22-23; *see* Ariz. R. Civ. P. 19(b)(2) (allowing court to "shap[e] the relief" to avoid prejudicing rights of required non-parties).  As applied here—at least before this court's reversal of the community-property characterization—it could have done so by equitably dividing the

remaining community property, including Angela's interest in Westbrook, or entering a money judgment against Angela. *See Lehn v. Al-Thanayyan*, 246 Ariz. 277, ¶ 16 (App. 2019) (courts may "make an award of money instead of merely dividing property" under A.R.S. § 25-318 (quoting *Martin v. Martin*, 156 Ariz. 452, 457 (1988))).

¶33      The availability of a money judgment reinforces our conclusion that the dissolution action did not affect title to real property. Our case law is "well established that a lis pendens may not be predicated on an action or suit for a money judgment but applies only to an action or suit which directly affects the title to real property." *Coventry Homes, Inc.*, 155 Ariz. at 217; *see also Muchesko v. Muchesko*, 191 Ariz. 265, 274 (App. 1997) (seeking real property to recover debt "does not turn the dissolution action into an action affecting real property"). Thus, while various remedies may have been available to Michael, none of them could affect Westbrook's title to real property.

### D. Michael's arguments relating to Westbrook's corporate form and possible fraudulent transfers do not affect our analysis.

¶34      Finally, Michael alludes to two other legal theories—alter ego and fraudulent transfer—that in his view undermine the requirement that Westbrook be joined. First, Michael argues that Westbrook's joinder is unnecessary because Angela is its sole member. As noted above, this view partially underpins the dissent's analysis as well. But it amounts to a request that we disregard Westbrook's corporate form without any allegation, let alone a finding, that it is Angela's alter ego. Given the statutes cited above, as well as our case law, we have no authority to do so. *See Butler Law Firm, PLC v. Higgins*, 243 Ariz. 456, ¶¶ 14-15 (2018) (LLCs are distinct entities from their agents); *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, ¶ 30 (App. 2010) (courts respect corporate form except when disregarding form is necessary to prevent fraud or injustice and entity is person's alter ego). And we doubt that such a finding could be entered without Westbrook's joinder as a party. *See Meritage Homes of Ariz., Inc.*, 251 Ariz. 365, ¶¶ 10-11, 22-23 (concluding that company was entitled to same statute of limitations applicable to claim against its alleged alter ego).

¶35      Second, Michael suggests that requiring Westbrook's joinder would be improper given that, in his view, Angela improperly transferred community assets in violation of the preliminary injunction imposed by A.R.S. § 25-315. But even if Angela violated that injunction, Michael points to no authority suggesting that such a violation provided the dissolution

court with authority to enter orders affecting Westbrook's title absent Westbrook's joinder.

¶36        Michael's argument amounts to an assertion that Angela fraudulently transferred community assets through T&A to Westbrook. But Michael has never sought to avoid that transfer through a fraudulent-transfer claim, either in the dissolution action or otherwise. *See* A.R.S. § 44-1007(A)(2) (allowing court to avoid fraudulent transfer). Had he done so, the action could have affected title to real property, thus entitling Michael to record a lis pendens. *Farris v. Advantage Cap. Corp.*, 217 Ariz. 1, ¶ 19 (2007).

¶37        But even so, Michael would have been required to name Westbrook—and perhaps also T&A, which, as deed-of-trust holder, also has an interest in the property—in the fraudulent-transfer case. *See Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, ¶ 45 (App. 2008) (providing that remedies for fraudulent transfer "address a creditor's rights against the transferee or the transferred asset"); *see also Farris*, 217 Ariz. 1, ¶ 3 (transferee was defendant in underlying avoidance action); *Mezey v. Fioramonti*, 204 Ariz. 599, ¶¶ 32-33 (App. 2003) (husband's mistress was defendant in fraudulent-transfer action brought by wife seeking to avoid transfers from husband to mistress), *disapproved on other grounds by Bilke v. State*, 206 Ariz. 462, ¶ 28 (2003). Absent his doing so, a fraudulent-transfer claim would not assist him in avoiding the groundlessness of his lis pendens.

¶38        In sum, Michael's lis pendens was groundless because he did not join Westbrook as a party in the dissolution action, which therefore could not affect Westbrook's title to real property. As a result, the trial court correctly concluded that Westbrook was entitled to attorney fees under A.R.S. § 33-420(B).

## III. Michael knew or had reason to know the lis pendens was groundless, so Westbrook was entitled to damages.

¶39        We must still determine whether Michael knew or had reason to know that the lis pendens was groundless. If so, Westbrook would be entitled to damages, as well as an alternative ground for attorney fees, under Section 33-420(A). Under our case law, a "showing that a recorded instrument is invalid is the best evidence that whoever recorded the instrument had reason to know it was invalid." *Delmastro & Eells*, 228 Ariz. 134, ¶ 29. We also presume people know the law. *Id.*

**¶40**        Here, Michael has presented insufficient evidence to overcome the presumption that he knew the law required him to join Westbrook as a party to avoid a finding of groundlessness.  Most of his argument centers around the dissolution court's later-reversed order that the law firm was community property.  The dissent's analysis does too.  But as we have explained, the firm's characterization as separate or community is irrelevant.  Likewise, even if Michael had a "subjective, good faith belief" that the lis pendens was proper, that is not relevant to the having "reason to know" standard in Section 33-420(A).  *See Delmastro & Eells*, 228 Ariz. 134, ¶ 31.  We therefore conclude that the trial court properly awarded Westbrook damages under Section 33-420(A).

## DISPOSITION

**¶41**        We affirm the trial court's award of damages under Section 33-420(A) and attorney fees under Section 33-420(B).  Under Section 33-420(B), we also award Westbrook its reasonable attorney fees on appeal, subject to its compliance with Rule 21(b) of the Arizona Rules of Civil Appellate Procedure.  As the prevailing party on appeal, Westbrook is also entitled to recover its taxable costs, again upon compliance with Rule 21(b).

E C K E R S T R O M, Presiding Judge, dissenting:

**¶42**        Under Arizona statute, new property acquired with the use of community property does not lose its characterization as community property merely because a petition for dissolution of marriage has been served in the interim.  A.R.S. § 25-211(B)(2) (petition for dissolution "does not . . . [c]hange the status of community property used to acquire new property or the status of that new property as community property").  Thus, if a litigant can establish that his or her ex-spouse acquired real property with community funds, then, regardless of how the ex-spouse structured or named the entity used to hold the property, the marital community would retain an ownership interest in the property as a matter of law.[1]

**¶43**        Such a result would clearly "affect title" as to the real property in question.  *See Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 16 (action affects title if resulting judgment could "expand, restrict, or burden a property owner's rights as bestowed by virtue of that title"); *see also Tucson*

---

[1]Contrary to the majority's suggestion, none of this reasoning would require Michael to demonstrate in the dissolution proceedings that Angela had intended to fraudulently transfer community funds to Westbrook.

*Estates, Inc. v. Superior Court*, 151 Ariz. 600, 604 (App. 1986) (action affects title when it involves any "adjudication of rights incident to title to real property"). And, it would do so in ways that would matter to any third party interested in the property. *See Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 16 (purpose of lis pendens to provide notice of lawsuit to "prevent[] innocent third persons from acquiring interests in the property during the lawsuit without notice of the lawsuit").

¶44        At the time Michael filed the lis pendens here, he had sound reason to believe that Angela may have used community funds to acquire the property held by Westbrook. The parties do not dispute that Westbrook held sole title to the property or that Westbrook was wholly owned by Angela. Nor do the parties dispute that Westbrook (Angela) purchased the property with a loan from another corporate entity, T&A, of which Angela held at least a fifty percent interest. And, at the hearing on the motion to quash the lis pendens, Michael presented T&A's bank statements, which showed that *all* of the funds loaned by T&A to Westbrook came from Angela's bank accounts. He also asserted without contradiction that the entirety of her income came from her law firm.

¶45        At minimum, these facts support more than a good faith belief that Angela owned the real property and that it was purchased, in whole or in large part, with funds belonging to Angela's law firm. *See Delmastro & Eells*, 228 Ariz. 134, ¶ 31. Once the dissolution court ruled that the law firm was community property, Michael had logical grounds to protect his potential interest in the Westbrook property—property apparently acquired with assets derived from the firm—by recording a lis pendens.

¶46        Thus, Michael's belief that the dissolution action might affect title on the real property was far from frivolous. *See Evergreen W., Inc.*, 167 Ariz. at 621 (defining "groundless" with reference to dictionary definitions of "frivolous" and Arizona cases defining frivolous claims). That belief was firmly anchored in express statutory instruction for how community property is traced and the dissolution court's then-binding rulings at that juncture in the dissolution proceedings. Nor did the lis pendens lack a basis in credible evidence. *Id.* (lis pendens groundless when not supported by credible evidence). Instead, Michael's claim found support in facts that were either undisputed or that he presented under oath with documentary support.

¶47        Therefore, Michael had an "arguable basis" to believe that the dissolution action would affect the title of the property. *Id.* (lis pendens not groundless if arguable basis for believing lawsuit would affect title). I

would therefore conclude the trial court erred in finding Michael recorded the lis pendens groundlessly.

¶48        Westbrook nonetheless insists that it was an indispensable party to any action that could affect its title to the property in question.  It therefore contends that Michael's failure to have joined Westbrook as a party to the dissolution action rendered the lis pendens groundless.  The majority adopts this argument.   But our statute that authorizes the recording of a lis pendens, § 12-1191(A)-(D), specifies only that the lis pendens must name the parties in the action affecting title—here, the dissolution action—and does not require the titleholder be named.

¶49        Nor does the text of that provision, or the purposes expressed thereby, suggest that joining the titleholder as a party must be an *implicit* pre-condition of a non-frivolous recording.  Section 12-1191 erects a process whereby litigants may place interested third parties on notice of underlying actions affecting title to real property.  *Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 16.  The statute specifies the required contents of a recording sufficient to accomplish that purpose.   § 12-1191(A) ("The notice shall contain the names of the parties, the object of the action or affirmative defense, the relief demanded and a description of the property affected.").[2] Notably absent are any procedural requirements for *how* parties must litigate the underlying action or the precision required in their complaints or answers.  *See Roberts*, 253 Ariz. 259, ¶ 20 (courts should not "inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions").

¶50        That absence should be no surprise.  As we have repeatedly reasoned in prior cases, our state's lis pendens statutes erect a salutary mechanism for noticing the existence of non-frivolous actions affecting title.  That notice regime is not intended as a proxy for either supervising the underlying litigation or forecasting the results of that litigation.  *See Evergreen W., Inc.*, 167 Ariz. at 620-21 (statutory purposes of lis pendens mechanism counsels against evaluating "which party will prevail on the merits" when evaluating groundlessness); *see also Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 11 (decision about whether underlying lawsuit truly affects title "should not involve a decision about which party will prevail on the merits of the underlying claim").

---

[2]Michael's recording complied with each of these requirements.

¶51 Further, § 12-1191 sets forth a regime for notifying interested parties of ongoing, rather than completed, litigation. Indeed, it authorizes the recording of lis pendens at the very outset of the underlying action. *See* § 12-1191(A) (recording of lis pendens authorized "at the time of filing the complaint, or thereafter"). The majority's holding—that filers must have already taken all necessary procedural steps to join parties in the underlying litigation to avoid groundlessness sanctions—stands at odds with the statute's authorization for recording a lis pendens before either party's initial disclosure deadlines arrive and before any responses to formal discovery requests are due.[3] *See* Ariz. R. Civ. P. 26.1(f) (setting deadlines for initial disclosure thirty days after each parties' initial pleading); Ariz. R. Civ. P. 33, 36(a) (generally providing parties thirty days to respond to interrogatories and requests for admissions).

¶52 As a threshold matter, the majority adopts Westbrook's contention that Westbrook was necessarily an indispensable party to any outcome affecting its title. Charging Michael with the presumed clarity of this conclusion, it posits that Michael therefore had "reason to know" his action could not have any effect on Westbrook's title when he recorded the lis pendens. *See* § 33-420(A) (authorizing sanctions when filer knows or has "reason to know" recording is groundless). But that reasoning overlooks that, at the time he recorded the lis pendens, Michael would also have had "reason to know" that he could simply move to join Westbrook as a party to the dissolution action if necessary during the dissolution proceedings.[4] *See* Ariz. R. Civ. P. 21 ("At any time—on terms that are just—the court may . . . join any party who may be properly joined under Rule 20(a).").

¶53 The majority also overlooks that Michael, and the dissolution court overseeing the underlying litigation, might have plausibly concluded

---

[3]Although Michael did not record the lis pendens in question at the outset of his dissolution action, he did record it within a month of a trial court's ruling that Angela's law practice was community property—the triggering event for a good faith belief that the dissolution could affect the title of property Westbrook acquired.

[4]During oral argument, Westbrook's counsel conceded the ease of joining parties, mid-litigation, in a dissolution action.

that Westbrook was not an indispensable party at all.[5]  Rule 19(a), Ariz. R. Civ. P., sets forth the circumstances under which a person or entity must be joined as a party.  Those circumstances exist when "that person . . . is so situated that disposing of the action in the person's absence may . . . *as a practical matter* impair or impede the person's ability to protect the interest." Ariz. R. Civ. P. 19(a)(1)(B)(i) (emphasis added).[6]

¶54            Here, Westbrook was wholly owned by Angela, a pre-existing party to the dissolution case.  The record also shows that Angela owned a controlling interest in the entity providing the loan to fund Westbrook's ownership of the real property.   Under these facts, Michael had a non-frivolous basis to believe that Angela, as a party to the dissolution proceeding, was well-situated to advocate for the interests of those entities, which were owned by her.  *See* Ariz. R. Civ. P. 19 bar committee note (Rule 19 drafted to retain "basic principle" that parties must be joined where doing so is required "by equity and good conscience").  Thus, at the time he recorded the lis pendens, Michael had a good faith basis, anchored in the pertinent procedural rule, to believe that Westbrook was not an indispensable party.

¶55            In articulating the requirements for the proper recording of a lis pendens notice—which do not include recording the underlying complaint or answer—our legislature could have reasonably concluded that such disputes about proper joinder would be better resolved in the course of the underlying litigation.  As noted, in setting forth the standards for how our courts must assess groundlessness claims, our jurisprudence has hewed to this understanding of the limited purpose of a lis pendens notice and a subsequent motion to quash.  *See Evergreen W., Inc.*, 167 Ariz. at 620-21; *see also Santa Fe Ridge Homeowners' Ass'n*, 219 Ariz. 391, ¶ 11.

¶56            The majority's holding also stands at odds with the text of our statute authorizing sanctions for the improper recording of a lis pendens. That text focuses on the legal bases for recording.  It allows sanctions for

---

[5]The judge who considered the motion to quash—and accepted the premise that Westbrook was an indispensable party—was not the judge presiding over the underlying dissolution case.

[6]Nothing about this assessment would require a trial court to make a formal finding that Westbrook was an "alter ego" of Angela for it to reasonably conclude that, as a practical matter, Angela was well-situated to protect Westbrook's interests in the dissolution proceeding.

the recording of documents the filer knows to be "groundless"—not for the recording of underlying complaints or answers with remediable pleading defects.   § 33-420(A) (sanctioning the recording of a fraudulent or groundless document but containing no language specifying how an underlying complaint or answer must be pled to support a lis pendens).

¶57        As this court has previously observed, our trial courts can undermine the salutary purposes of the lis pendens notice regime by too carefully scrutinizing the merits of the underlying action and thereby chilling the well-intended use of the notice process.  *See Evergreen W., Inc.*, 167 Ariz. at 621 (noting that "the purpose of § 33-420 was not to undermine the protection afforded to plaintiffs under § 12-1191" and emphasizing that "a plaintiff is not prohibited from recording a lis pendens merely because he may lose on the merits of his action").  In accepting Westbrook's invitation to focus on a debatable feature of joinder law, an issue easily raised by Angela in the underlying case, and, if resolved in her favor, easily remedied by a simple motion to join, I fear that the majority has elevated the hypertechnical above the practical in assessing the circumstances under which a non-frivolous lis pendens may be properly recorded.